UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Victor Fields, | Case No. 20-cv-2227 (ECT/HB) |
| Plaintiff, | |
| v. | ORDER AND REPORT AND RECOMMENDATION |
| Gary Peterson, Ashlee Berts, Rebecca Fratzke, Paul Schnell, Robert Steele, Scott Hadrava, Amanda Biggins, Stacy Olson, Watrin, Trevor Brewer, J. Charbeau, Heather Emerson or Nelson, Allison Hunt, Tammy Beavens, Kristy Shoemaker, Tom Soles, Michelle Saari, Eric Rasmussen, B. Tatum, J. Pugh, Miranda Stenlund, Kenneth Peterson, Vickie Janssen, Michelle Smith, John Doe (Tawny Kraemer), John Doe Special Operations Response Team Members, John Doe Crisis Intervention Team's (Staff's/Officers), C-I-T, MCF–Rush City, John Doe (Internal Investigative Staff's & Officers), Office Special Investigators—OSI, John Doe Defendants, and Barnes, | |
| Defendants. | |

---

Plaintiff Victor Fields is an inmate at the Minnesota Correctional Facility in Stillwater, Minnesota. He is proceeding pro se and has filed an application to proceed *in forma pauperis* (IFP Application) [ECF No. 9]. The case is before the Court pursuant to 28 U.S.C. § 1915 for resolution of the IFP Application and pursuant to 28 U.S.C. § 1915A for screening of the complaint. Also pending before the Court are Fields's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion")

[ECF No. 2] and a motion titled "My Life Is in Danger Urgent Emergency—Need Help (Can't File within Facility)" [ECF No. 31].[1]  For the reasons set forth below, the Court grants the IFP Application, concludes that the Second Amended Complaint [ECF No. 8] is the presently operative complaint, denies Fields's implicit requests to amend the Second Amended Complaint, recommends that the Second Amended Complaint be dismissed in part, recommends that the TRO/PI Motion be denied, and orders Fields to provide service information for the remaining Defendants.

## I.   BACKGROUND

### A.   Filings Before Second Amended Complaint

On October 21, 2020, the Court received a letter from Fields, then an inmate at the Minnesota Correctional Facility in Rush City, Minnesota ("MCF–Rush City").  (Fields Letter ("October 2020 Letter") [ECF No. 1].  The letter alleged that Minnesota corrections personnel were engaged in a vast conspiracy to have Fields attacked by other MCF–Rush City inmates.  (*See generally id.* at 1–16.)[2]  The letter lacked a caption and did not structurally resemble a complaint, though it did contain requests for

---

[1] The Court has also considered the following related filings: Fields's Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 ("Second Amended Complaint") [ECF No. 8]; filing titled "Additional Facts" [ECF No. 12]; filing titled "Statement of Claims (Defendants)" [ECF No. 15]; filing titled "Exhibit 7" [ECF No. 16]; filing titled "Additional Facts (Noteworthy to this Case)" [ECF No. 17]; filing titled "Additional Facts Related to Prison Grievances" [ECF No. 22]; filing titled "Additional Facts Related to Prison Grievances" [ECF No. 25]; and filing titled "Hypersexual Disorders" [ECF No. 32].

[2] The Court's citations to filed documents use the pagination assigned by the CM/ECF system.

compensatory damages and various forms of injunctive relief (including transfer to another prison). (*See id.* at 13, 15–16.)

A week later, the Court received the TRO/PI Motion [ECF No. 2]. This document has a caption but is two pages in length, handwritten, and lacks any obvious internal structure. Fields asked the Court to issue a temporary restraining order "immediately" and a preliminary injunction "against all Defendants in this case." (TRO/PI Motion at 1–2.) The relief proposed is somewhat unclear but may include a request to be transferred to an out-of-state prison. (*See id.* at 1–2, 6, 10.)[3]

On November 12, 2020, the Court received a third document from Fields, captioned "Sealed Complaint" and listing specific defendants. (Am. Compl. [ECF No. 5].) As best as the Court can tell, the Amended Complaint purported to add various allegations to those contained in the October 2020 Letter. For instance, Fields claimed that various prison officials were refusing to follow prison rules and regulations in efforts to prevent him from bringing this suit. (*See id.* at 1.)

### B. Second Amended Complaint

The Court received Fields's Second Amended Complaint [ECF No. 8] on November 30, 2020. For present purposes, a fulsome summary of the Second Amended Complaint is unnecessary.

---

[3] The motion is a 14-page handwritten document. Much of the discussion in the motion appears to repeat facts and assertions presented in the October 2020 Letter, but some content involves conduct postdating that filing.

As with his earlier filings, Fields contends that various Defendants are conspiring to have other inmates at MCF–Rush City assault him. (2d Am. Compl. at 6, 12–13.) He describes at least two incidents. First, in September 2019, Fields allegedly was assaulted by inmate Toparious Paige after prison officials transferred Paige to MCF–Rush City. (*See id.* at 6.) Fields was convicted of murdering LeTerrance Paige, Toparious's brother, *see, e.g.*, State v. Fields, 679 N.W.2d 341, 344 (Minn. 2004), and Toparious Paige and Fields had already been in a fight at another facility (2d Am. Compl. at 6, 13). As a result, Fields states, prison officials should have known that he and Toparious Paige had an "incompatibility" and should not be in the same facility. Second, Fields details a September 2020 assault by an inmate named "Cosey." (*See, e.g., id.* at 9, 13.) Fields attributes this assault to corrections staff spreading rumors about him to gangs within MCF–Rush City, and he also claims that certain officers used excessive force against him to break up this fight. (*See, e.g., id.* at 19–20.) Above and beyond the actual fights, Fields contends more generally that interactions between prison staff and inmates lead him to constant fear of physical attack; indeed, he asserts that other inmates are rewarded if and when they assault him. (*See, e.g., id.* at 15, 23, 28.)

This issue of rumors underpins a broader set of complaints by Fields. He alleges that various corrections officers have spread false rumors to other staff as well as prison inmates—namely, that Fields is a "snitch" and a "sex offender," that he has written sexually provocative material targeting prison staff and has sexually assaulted female staff members, and that he is a member of particular gangs. (*See, e.g., id.* at 19, 23, 27, 30, 32.) Fields also alleges that various Defendants have filed false disciplinary reports

4

against him. (*See, e.g.*, *id.* at 33.) In addition to causing other inmates to dislike him, Fields claims these rumors and false reports are part of an attempt to generate a record of conduct that would support civil commitment or denials of future release or parole. (*See id.* at 21–22.)

Fields also contends that he is inappropriately treated differently than other inmates. In particular, he argues that he suffers from some sort of sexual exhibitionism disorder, but that his treatment for this condition differs from that provided to other exhibitionist inmates. (*See, e.g.*, *id.* at 13.) This includes, for instance, not letting Fields be treated by female psychologists even though other inmates can receive such treatment. (*See id.* at 25, 35.) Fields also appears to suggest that he has been inappropriately placed in administrative segregation. (*See id.* at 35.)

As relief, Fields asks for compensatory damages and punitive damages (including payments from Defendants as well as non-Defendant inmates), as well as attorney's fees. (*See id.* at 4.) He also asks for this Court to either have him transferred to another state or order "that OSI be removed." (*Id.*) Finally, he requests an FBI investigation of MCF-Rush City and DOC-Central Office OSI. (*See id.*)

C.   **Filings After Second Amended Complaint**

Since filing the Amended Complaint, Fields has filed the IFP Application [ECF No. 9], as well as paid an initial partial filing fee [ECF No. 11]. He has also filed at least eight documents purporting to provide additional information about his claims [*see* ECF Nos. 12, 15–17, 22, 25, 31–32]. The Court will construe each of these filings as an implicit motion to amend the Second Amended Complaint; that is, the Court understands

Fields wants the Court to treat the content of these materials as part of the operative complaint.

## II. ANALYSIS

### A. Operative Pleading

Given all of the filings that Fields has provided that purport to contain relevant allegations, a threshold matter is isolating exactly what the operative pleading is. When Fields filed the October 2020 Letter, it technically was the initial complaint, notwithstanding its various flaws. And when Fields filed the Amended Complaint, the original complaint had yet to be served. Federal Rule of Civil Procedure 15(a)(1) permits a plaintiff to amend its complaint "once as a matter of course" in two circumstances: (1) within 21 days of serving it or (2) 21 days after service of a responsive pleading or a Rule 12(b), (e), or (f) motion. Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's consent or the court's leave." The rule does not address whether attempted amendment *before* service, as is the case here requires leave of court or whether it is subject to the "once as a matter of course" language of Rule 15(a)(1) since neither deadline has expired.[4] But in any event, Fields should have sought leave of Court when he filed his Second Amended Complaint. The

---

[4] Courts have handled similar situations in various ways. *E.g.*, *Young v. Ellison*, No. 20-cv-2144 (JRT/DTS), 2020 WL 8673995, at *2 (D. Minn. Dec. 14, 2020) (construing amended complaint filed before service as presenting an implicit motion to amend the complaint), *R. & R. adopted*, 2021 WL 767039 (D. Minn. Feb. 26, 2021); *Hartigan v. Minnesota*, No. 10-cv-3167 (JNE/JJK), 2010 WL 3515742, at *1 & n.1 (D. Minn. Aug. 10, 2010) (allowing the amended complaint "as a matter of course" and alerting the plaintiff that future attempts to amend would be governed by Rule 15(a)(2)), *R. & R. adopted*, 2010 WL 3515732 (D. Minn. Aug. 31, 2010).

Court will therefore interpret the Second Amended Complaint as presenting an implicit motion to amend the operative complaint. Rule 15(a)(2) provides that a court "should freely give leave [to amend a complaint] when justice so requires." Given that the Second Amended Complaint better resembles a traditional complaint than either of its predecessors, the Court grants the implicit motion to amend and will consider the Second Amended Complaint as the current operative pleading in this action. Fields is cautioned, however, that the Court will not interpret future filings to present an implicit motion to amend. Any request for leave to amend or any other request for action by the Court must be made in the form of a motion that complies with District of Minnesota Local Rule 7.1 (as explained in footnote 5 below) and, if it involves a request for leave to amend a pleading, with Local Rule 15.1.

The Court turns now to Fields's filings that purport to supplement the Second Amended Complaint [*see* ECF Nos. 12, 15–17, 22, 25, 31–32]. Local Rule 15.1 explains what this District requires when a plaintiff seeks to amend a complaint:

> **(a)** **Amended Pleadings.** Unless the court orders otherwise, any amended pleading must be complete in itself and must not incorporate by reference any prior pleading.
>
> **(b)** **Motions to Amend.** Any motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading. If the court grants the motion, the moving party must file and serve the amended pleading.

7

None of Fields's attempted post-Second Amended Complaint factual supplements follow Local Rule 15.1.  Unlike the Second Amended Complaint, the supplements are not standalone pleadings, and none really explains exactly what the Court is to do with the new information and how it compares to what the Second Amended Complaint already contains.  Fields leaves it to the reader to integrate his new materials into his earlier pleading.  This puts an unacceptable burden on the Court and Defendants, and the Court denies any implicit motions to amend contained in the supplements.  But these denials are without prejudice.  If Fields seeks leave to add claims or allegations to the Second Amended Complaint, he must file a formal motion to amend that comports with Federal Rule of Civil Procedure 15(a) and Local Rules 7.1 and 15.1.  Specifically with respect to Local Rule 15.1, he must include with his motion a copy of the new proposed amended complaint; the new amended complaint must be a standalone document; and he must clearly describe how the proposed amended complaint differs from the Second Amended Complaint.  Given this treatment of ECF Nos. 12, 15–17, 22, 25, and 31–32, the present operative pleading in this action is simply the Second Amended Complaint itself.[5]

---

[5] Interspersed in some of these documents are various requests that this Court do something on Fields's behalf—sometimes clearly articulated, sometimes only implicitly.  To the extent Fields is asking the Court to grant him some form of relief, he cannot make such requests indirectly in the midst of other documents.  Instead, he must file a specific motion expressing the request and providing the legal and factual justifications for it.  *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.  The motion must: (A) be in writing . . . ; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."); *see also* D. Minn. LR 7.1 (describing procedures for nondispositive and dispositive motions). The Court will not sift through lengthy documents to locate Fields's requests for court action; it is Fields's obligation to make those requests clear.  As a result, to the extent Fields's filings at ECF Nos. 12, 15–17, 22, 25, and 31–32 contain embedded requests for relief, the Court denies them.

### B. Second Amended Complaint

#### 1. Screening standards

Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3) speaks of dismissing "the action," but courts routinely use the rule to dismiss portions of actions where jurisdiction is lacking. *See, e.g.*, *Chernin v. United States*, 149 F.3d 805, 813–14 (8th Cir. 1998); *In re Polaris Mktg., Sales Practices, & Prod. Liab. Litig.*, 364 F. Supp. 3d 976, 982–84 (D. Minn. 2019).

#### 2. Claims against state entities

As presently drafted, the Second Amended Complaint appears to name three entities: MCF–Rush City; "Office Special Investigators—OSI," which the Court construes to mean the Minnesota Department of Corrections's Office of Special Investigations; and "C-I-T," which the Court construes as meaning the Crisis Intervention Team at MCF–Rush City. As these are all state entities, the Court must consider how the Eleventh Amendment affects claims against these Defendants.

Under the Eleventh Amendment, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. Notwithstanding the phrase "another State" here, precedent establishes that "'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (emphasis added) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495

9

U.S. 299, 304 (1990)).  The issue is jurisdictional: under the Eleventh Amendment, federal courts generally lack subject-matter jurisdiction over claims against an unconsenting state.

Here the Second Amended Complaint does not name the State of Minnesota itself, but MCF–Rush City, the MNDOC's Office of Special Investigations, and a Minnesota prison's "Crisis Intervention Team."  For Eleventh Amendment purposes, the distinction does not matter; state sovereign immunity also applies to agencies and instrumentalities acting under a state's control.  *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (citing cases); *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) (citing *N. Ins. Co. v. Chatham Cty.*, 547 U.S. 189, 193 (2006)).  The Second Amended Complaint gives no indication that Minnesota has consented in any way to Fields's suit, and the Court is unaware of any applicable waiver or other act expressing such consent.  This Court thus lacks subject-matter jurisdiction over Fields's claims against these Defendants.  The Court recommends dismissing those claims without prejudice.

### 3. Damages claims against individual Defendants in their official capacities

What remains are Fields's claims against numerous individual defendants.  Fields asserts that he is suing all individual Defendants in both their individual capacities and their official capacities with the State of Minnesota.  Included among his claims against the various individual Defendants are claims for damages.  Because Fields does not distinguish how his requests for relief apply to the capacities in which he has sued the

Defendants, the Court construes the Second Amended Complaint as attempting to present damages claims against the various individual Defendants in their official as well as in their individual capacities.

Caselaw is clear that § 1983 official-capacity claims against individual state officials are, in effect, claims against the state itself. *See, e.g.*, *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017) (citing cases); *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006)). Thus, for the same reasons given above concerning the entity Defendants, this Court lacks jurisdiction over Fields's official-capacity claims for damages against individual Defendants. The Court therefore recommends that those claims be dismissed without prejudice.

### C.   IFP Application

Some portions of the Second Amended Complaint remain viable following screening.[6] As a result, the Court grants the IFP Application and will order Fields to provide service-related information for the remaining Defendants.

### D.   TRO/PI Motion

The Court now turns to Fields's TRO/PI Motion. As discussed above, Fields's key request is for the Court to order that Fields be transferred to a prison outside the State of Minnesota. (*See* TRO/PI Mot. at 1.)

---

[6] To be clear, the Court has screened the Second Amended Complaint under 28 U.S.C. § 1915A only for claims as to which this Court lacks subject matter jurisdiction. Nothing in this Report and Recommendation is intended to opine on whether some or all of the remaining claims would survive a motion to dismiss, should Defendants choose to bring one.

The Court will address the preliminary-injunction portion of the TRO/PI Motion first and will recommend that it be denied without prejudice. Under Federal Rule of Civil Procedure 65(a)(1), a district court "may issue a preliminary injunction only on notice to the adverse party." There is no indication that Defendants have notice of the TRO/PI Motion; indeed, they have yet to be served in this action.

With respect to the request for a TRO, there is no indication that Defendants are aware of Fields's request. Under Federal Rule of Civil Procedure 65(b)(1)(B), a district court can issue a TRO without notice to an adverse party "only if . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." As best as the Court can tell, Fields has provided no such certification, nor has he explained why notice to Defendants ought not be required before this Court orders something as drastic as demanding that the Minnesota Department of Corrections try to place Fields into another state's correctional system.

Furthermore, while the Court here recommends the TRO/PI Motion be denied for procedural reasons—failure to comply with applicable procedural rules—the Court would have recommended denial on substantive grounds even if Fields had complied with the proper procedures. Whether considering a request for a TRO or a preliminary injunction, district courts in the Eighth Circuit consider the four *Dataphase* factors: "'(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.'" *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (quoting

*Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *see also, e.g.*, *3M Co. v. Individuals, P'ships, & Unincorporated Ass'ns Identified in Schedule "A,"* No. 20-CV-2348 (SRN/TNL), 2020 WL 6817650, at *1 (D. Minn. Nov. 20, 2020) (applying *Dataphase* factors to TRO request). Critically, the party seeking a TRO or preliminary injunction has the burden of showing the propriety of such relief. *See, e.g.*, *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (citing *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003)); *3M Co.*, 2020 WL 6817650, at *1 (quoting *Life Time Fitness, Inc. v. Decelles*, 854 F. Supp. 2d 690, 694–95 (D. Minn. 2012)). To his credit, Fields appears to refer to the *Dataphase* factors in the TRO/PI Motion (*see* TRO/PI Mot. at 1–2), but that discussion is cursory and is insufficient to carry Fields's burden of establishing that the *Dataphase* factors support imposing a TRO or preliminary injunction here.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The Second Amended Complaint [ECF No. 8] is the presently operative pleading in this action.

2. Plaintiff Victor Fields's filings at ECF Nos. 12, 15, 16, 17, 22, 25, 31, and 32, insofar as they ask to amend the Second Amended Complaint or for other relief, are **DENIED** without prejudice.

3. Plaintiff Victor Fields's Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 9] is **GRANTED**.

4. Plaintiff Victor Fields must submit a properly completed Marshal Service Form (Form USM-285) for each Defendant. If Fields does not complete and return the Marshal Service Forms within 30 days, the Court will recommend dismissing this matter without prejudice

           for failure to prosecute. Marshal Service Forms will be provided to Fields by the Clerk of Court.

5. After the return of the completed Marshal Service Forms, the Clerk of Court is directed to seek waiver of service from Defendants Gary Peterson, Ashlee Berts, Rebecca Fratzke, Paul Schnell, Robert Steele, Scott Hadrava, Amanda Biggins, Stacy Olson, "Watrin," Trevor Brewer, J. Charbeau, "Heather Emerson or Nelson," Allison Hunt, Tammy Beavens, Kristy Shoemaker, Tom Soles, Michelle Saari, Eric Rasmussen, B. Tatum, J. Pugh, Miranda Stenlund, Kenneth Peterson, Vickie Janssen, Michelle Smith, John Doe (Tawny Kraemer), and Barnes—all in their individual capacities—consistent with Rule 4(d) of the Federal Rules of Civil Procedure.

6. If a defendant sued in his or her individual capacity fails without good cause to sign and return a waiver within 30 days of the date that the waiver is mailed, the Court will impose upon that defendant the expenses later incurred in effecting service of process. Absent a showing of good cause, reimbursement of the costs of service is mandatory and will be imposed in all cases in which a defendant does not sign and return a waiver of service form. *See* Fed. R. Civ. P. 4(d)(2).

7. The U.S. Marshals Service is directed to effect service of process on Gary Peterson, Ashlee Berts, Rebecca Fratzke, Paul Schnell, Robert Steele, Scott Hadrava, Amanda Biggins, Stacy Olson, Watrin, Trevor Brewer, J. Charbeau, Heather Emerson or Nelson, Allison Hunt, Tammy Beavens, Kristy Shoemaker, Tom Soles, Michelle Saari, Eric Rasmussen, B. Tatum, J. Pugh, Miranda Stenlund, Kenneth Peterson, Vickie Janssen, Michelle Smith, John Doe (Tawny Kraemer), and Barnes—all in their official capacities with the State of Minnesota—consistent with Rule 4(j) of the Federal Rules of Civil Procedure.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The claims brought against Defendants MCF–Rush City, Office Special Investigators—OSI, and C-I-T in the Second Amended

      Complaint [ECF No. 8] be **DISMISSED without prejudice** for lack of jurisdiction.

2. Claims for damages brought against the individual Defendants in their official capacities in the Second Amended Complaint [ECF No. 8] be **DISMISSED** without prejudice for lack of jurisdiction.

3. Plaintiff Victor Fields's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 2] be **DENIED**.

Dated: March 18, 2021            *s/ Hildy Bowbeer*
                                               Hildy Bowbeer
                                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).