# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Victor Fields,

        Plaintiff,

v.

Ashlee Berts, Lt. Gary Peterson, Rebecca Fratzke, Scott Hadrava, Robert Steele, B. Tatum, Paul Schnell, Amanda Biggins, Stacy Olson, Watrin, Trevor Brewer, J. Charbeau, Heather Emerson or Nelson, Allison Hunt, Tammy Beavens, Kristy Shoemaker, Tom Soles, Michelle Saari, Eric Rasmussen, J. Pugh, Miranda Stenlund, Kenneth Peterson, Vickie Janssen, Michelle Smith, John Doe (Tawny Kraemer), Barnes, John Doe (Special Operations Response Team Members), John Doe (Crisis Intervention Team's Staffs/Officers), John Doe (Internal Investigative Staff's & Officers), and John Doe,

        Defendants.

Case No. 20-CV-2227 (ECT/JFD)


**REPORT AND RECOMMENDATION**

---

This case comes before the Court on three motions: (1) Defendants' Motion to Dismiss *pro se* Plaintiff Victor Fields's Second Amended Complaint ("SAC") (Dkt. No. 68); (2) Plaintiff's Motion Requesting Permission to File from U.S. District Judges and Defendants ("Motion for Permission") (Dkt. No. 90); and (3) Plaintiff's Motion for a Writ of Habeas Corpus Ad Testificandum ("Motion for a Writ") (Dkt. No. 91). These Motions

have been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

In their Motion to Dismiss, Defendants argue that Mr. Fields's SAC should be dismissed because it fails to state a claim for which relief can be granted and is precluded by previous litigation. (Defs.' Mem. Supp. Mot. Dismiss at 2–3, Dkt. No. 69; Defs.' Reply Pl.'s Mem. Opp'n Mot. Dismiss, Dkt. No. 88.) Mr. Fields opposes Defendants' Motion and asks this Court to deny it for various reasons. (Pl.'s Mem. Opp'n Mot. Dismiss, Dkt. No. 81.)

In his Motion for Permission, Mr. Fields asks this Court to allow him to file his Motion for a Writ, and for relief in the form of a Federal Bureau of Investigation ("FBI") investigation involving physical testing of Defendants. (Pl.'s Mot. Permission at 1.) In his Motion for a Writ, Mr. Fields asks the Court to order that he be brought to the court to testify in Defendants' trial. (Pl.'s Mem. Supp. Writ at 1–2.) Defendants oppose both Motions, asking the Court to deny them because they are not ripe and are frivolous. (Defs.' Mem. Opp'n Pl.'s Mot. Permission and Mot. Writ, Dkt. No. 94.)

The Court recommends granting Defendants' Motion in part, and denying Mr. Fields's two pending Motions, for the following reasons.

## I.    BACKGROUND

Plaintiff Victor Fields is an inmate currently housed at the Minnesota Correctional Facility located in Stillwater, Minnesota ("MCF-Stillwater"). Mr. Fields is serving a life sentence for first-degree murder imposed on October 4, 2002. *State v. Fields*, 679 N.W.2d 341 (Minn. 2004). He is proceeding in this action *pro se*. Defendants are various employees

of the Minnesota Correctional Facility located in Rush City, Minnesota ("MCF-Rush City"), where the Department of Corrections ("DOC") formerly housed Mr. Fields.

### A. Mr. Fields's Second Amended Complaint

Mr. Fields initiated this action brought under Title 42 U.S.C. § 1983 on October 21, 2020. (Dkt. No. 1.) The operative pleading is his Second Amended Complaint ("SAC"), which is handwritten and 36 pages long. (Dkt. No. 8.) In his SAC, Mr. Fields generally alleges Defendants conspired to have him assaulted by other MCF-Rush City inmates. (*Id.* at 4, 7, 12–30, 32–35.) He claims that he is in constant fear of physical attack because staff members have encouraged other inmates to dislike him and have rewarded them when they assault him. (*Id.* at 15, 20, 23, 28, 32.) Staff members have effected this encouragement by spreading false rumors to other staff members and prison inmates, including rumors that that Mr. Fields is a "sex offender" and a "snitch"; has a history of sexually assaulting staff members; has written sexually provocative material targeting staff; and is a member of certain gangs. (*Id.* at 20, 23, 30.) Mr. Fields claims that some Defendants have filed false disciplinary reports against him to support these false rumors. (*Id.* at 22, 24–27, 33, 36.) He also claims these false reports are part of a larger scheme to ensure he will be denied future release or parole, or alternatively, will be civilly committed. (*Id.* at 14, 20, 24, 27, 29–30, 32–33.) Mr. Fields also alleges that Defendants have used excessive force against him. (*Id.* at 7, 16–17, 20, 29.)

Mr. Fields details at least two specific incidents of alleged attacks by other inmates. In the first incident, Mr. Fields alleges that, in September 2019, an inmate named Toparious Paige assaulted him shortly after the DOC transferred Mr. Paige into MCF-Rush City, and

that Defendants failed to protect him. (*Id.* at 6, 12, 13–14, 16–17, 21–22, 26–27, 32.) Mr. Fields claims that Defendants should have known that he and Mr. Paige were incompatible—and should not have housed them in the same facility—for two reasons: first, a jury convicted Mr. Fields of murdering Mr. Toparious' brother; and second, the two men had a history of fights in a different facility. (*Id.* at 13–14, 22, 29.) In the second incident, Mr. Fields claims that, in September 2020, an inmate named "Cosey" assaulted him. (*Id.* at 22, 30.) Mr. Fields alleges that Mr. Cosey assaulted him because Defendants spread rumors to known gangs within MCF-Rush City to provoke the assault. (*Id.* at 22.)

In addition to these allegations of assaults—and the alleged rumors precipitating them—Mr. Fields claims he has serious medical needs, to which Defendants have shown deliberate indifference, and that other inmates are given better medical care than he is. (*Id.* at 7–8, 27, 32, 35.) He alleges that, while there are other inmates who suffer from the same sexual exhibitionism disorder from which Mr. Fields claims to suffer, prison staff provide him with different, inferior treatment. (*Id.* at 13, 25, 27, 28.) Examples of this different treatment include refusing to allow Mr. Fields to be treated by female psychologists, denying him opportunities to engage in sexual activities with staff members, and inappropriately placing him in administrative segregation. (*Id.* at 14, 18, 20, 25, 27–28, 30, 32–35.)

As relief for the harms alleged, Mr. Fields seeks compensatory and punitive damages, as well as attorney's fees. (*Id.* at 4.) He also requests that the Court order either his transfer to another state, or that the employees in the DOC's Office of Special

Investigators ("OSI") be removed. (*Id.*) Beyond this, he also requests the Court order an

FBI investigation of both MCF-Rush City's OSI, and of the DOC-Central Office OSI. (*Id.*)

### B.    Post-SAC Procedural Posture

In addition to his SAC, Mr. Fields has filed numerous documents, including Motions

for a temporary restraining order and preliminary injunction (Dkt. No. 2) and for

emergency relief (Dkt. No. 40), both of which the court previously denied (Dkt. No. 58),

as well as supplemental pleadings that the court interpreted to be implicit motions to amend

his SAC. (Dkt. Nos. 12, 15–17, 22, 25, 31–32). The court also denied these implicit motions

to amend for failure to comport with Federal Rule of Civil Procedure 15(a) and Local Rules

7.1 and 15.1. *See Fields v. Berts*, No. 20-CV-2227 (ECT/HB), 2021 WL 1732257, at *1

(D. Minn. May 3, 2021), *appeal dismissed*, No. 21-2087, 2021 WL 5285794 (8th Cir. July

7, 2021). Thus, the SAC remains the operative pleading.

Additionally, the court dismissed Mr. Fields's SAC, in part, pursuant to the Eleventh

Amendment, holding that the court lacked subject matter jurisdiction over the MCF-Rush

City facility, the Minnesota DOC's OSI, and the MFC-Rush City Crisis Intervention Team

because suits against the state (and its agents) may only proceed in federal courts where

the state entity waives its immunity and consents to be sued, and these Defendants offered

no such waiver. *Id.* at *2. The court, likewise, dismissed all damages claims against the

remaining Defendants in their official capacities due to lack of subject matter jurisdiction,

holding that the Eleventh Amendment barred Mr. Fields's suit against state employees in

their official capacities absent Minnesota's consent to waive state sovereign immunity,

which the State had not given. *Id.* Thus, Mr. Fields's suit against the remaining Defendants is against each Defendant purely in their individual capacity.

Mr. Fields appealed the district court decisions on his post-SAC filings to the United States Court of Appeals for the Eighth Circuit. (Dkt. No. 61.) The Court of Appeals affirmed the district court's order as to its denial of Mr. Fields's request for a preliminary injunction and dismissed the remainder of Mr. Fields's appeal for lack of jurisdiction. *See Berts*, 2021 WL 5285794, at *1.

### C.    Defendants' Motion to Dismiss

Defendants now bring a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and argue that this Court should dismiss Mr. Fields's SAC for two reasons. First, Defendants argue that Mr. Fields fails to state a claim upon which relief can be granted. (Defs.' Mem. Supp. Mot. Dismiss at 2.) Second, Defendants contend that Mr. Fields already litigated some of his instant claims in *Fields v. Huot, et al.*, 17-CV-2662 (WMW/KMM), *R. & R. adopted sub nom. Fields v. Henry*, No. 17-CV-2662 (WMW/KMM), 2019 WL 6037425 (D. Minn. Nov. 14, 2019), and that the doctrines of res judicata and collateral estoppel preclude Mr. Fields from litigating these claims again. (*Id.* at 2–3.)

In his Memorandum in Opposition to Defendants' Motion to Dismiss, Mr. Fields asserts that his Complaint states a sufficiently pleaded claim for relief under the Eighth Amendment that protects him from being subject to "[Assaults by Other Inmates]; Abuses by officers [and] medical neglect . . . ." (Pl.'s Mem. Opp'n Mot. Dismiss ¶ 1.) Mr. Fields claims that his SAC "states more than Allegations But Facts Proven [and] in evidence."

(*Id.* at 18.) Regarding his failure to protect claim, Mr. Fields argues that Defendants conspired to orchestrate physical assaults on him by members of gangs. (*Id.* ¶¶ 2–4; *see also id.* at 15–17, 20.) He also attaches the Minnesota DOC's policy 201.110, which states, "No offender/resident or group of offenders/residents may be given control or authority over other offenders/residents at any time," and argues this policy does not authorize Defendants' to encourage other inmates to assault him. (*Id.* at 7; Pl.'s Ex. 1, Dkt. No. 82.) Regarding the denial of adequate medical care claim, Mr. Fields argues that Defendants denied him access to "Exhibitionism Programming" in which inmates can participate in "Sexual Activities From Assigned Female Staffs" because he did not fit the required criteria, which he argues controverts evidence that he suffers from an "Exhibitionistic Disorder." (*Id.* at 4–5, 8–10.) Mr. Fields alleges that these are "Racist Practice[s]." (*Id.* at 6.) Mr. Fields also responds to Defendants' argument that some of his claims are barred by res judicata and collateral estoppel, arguing he made these claims in earnest and does not know what those doctrines mean. (*Id.* at 10.) He argues the issues in this case differ from *Huot*, and that he named only some—but not all—of the same Defendants in both suits. (*Id.* at 23.) Mr. Fields also contends that Defendants' actions are intended to result in his civil commitment. (*Id.* at 16.) He claims that, as relief, he "want[s] All them shook down And the Defendants/officers And Staff That need to Be Removed—Terminate ASAP[,]" and for the FBI to investigate Defendants and have them "Swabbed and Tested" to determine if they are dangerous sexual predators. (*Id.* at 22–23.)[1]

---

[1] The Court also notes that Plaintiff has also filed several documents since Defendants filed this Motion to Dismiss that, in general, restate his arguments that his SAC adequately

In reply to Mr. Fields's response, Defendants reiterate their arguments that the Court should dismiss Mr. Fields's SAC for failure to state a claim and because some claims are precluded by *Huot*. (Defs.' Reply Pl.'s Mem. Opp'n Mot. Dismiss at 1–5.)

### D.    Plaintiff's Motion for Permission and Motion for a Writ

Also before this Court are two related Motions filed by Mr. Fields. In his Motion for Permission, Plaintiff gives the Court notice he is filing a "Petition for Writ of Habeas Corpus Ad Testificadum [sic] and Order Granting Writ of Habeas Corpus Ad Testificandum." (Pl.'s Mot. Permission at 1.) Mr. Fields argues this Motion for Permission is necessary because he is *pro se* and mentally ill, and because he is witnessing "[an] illegal operation that's unconstitutional" where correctional officers are obtaining "Personal and Sexual Gain with inmates" and are "Setting [him] up" and threatening him. (*Id.*) He asks the Court to order a "[Task Force] Be Put Together For Them To Be Locked Down And Assessed!" and to subject Defendants to "Mandatory Cotton Swab[s] in the mouth" to test for "past crimes." (*Id.* (emphasis in original).)

In his Motion for a Writ, Mr. Fields asks the Court to "require[e] Warden GUY Bosch to bring/transport [Mr. Fields] before the court for Trial Scheduled to Commence on TBD*." (Pl.'s Mot. Writ. at 1.) Mr. Fields argues that Defendants should be put on trial; that he should be permitted to participate by selecting jurors and managing his witness; and that Defendants should bear the costs of implementing this Writ. (*Id.* at 1–2.)

---

alleges his claims. (Pl.'s Letter, Dkt. No. 95; Pl.'s Order, Dkt. No. 106; Pl.'s Notice, Dkt. No. 109; Pl.'s Exs., Dkt. No. 110; Pl.'s Ex., Dkt. No. 111.)

In their Memorandum in Opposition to both of Mr. Fields's Motions, Defendants ask the Court to deny his Motions because they are not ripe absent a scheduled trial in this action, which has not occurred, and because the relief sought is frivolous. (Defs.' Mem. Opp'n Pl.'s Mot. Permission and Mot. Writ.)

## II.    ANALYSIS

Having read the parties' filings carefully, the Court will consider the parties' three Motions in turn according to the applicable legal standards.

### A.    Defendants' Motion to Dismiss

Defendants ask this Court to dismiss Mr. Fields's SAC under Rule 12(b)(6) for failure to state a claim upon which this Court can grant relief. (Defs.' Mem. Supp. Mot. Dismiss at 2.) When a defendant moves to dismiss an action under Rule 12(b)(6), courts "'must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.'" *Mendez v. Paul*, No. 18-CV-2817 (PJS/HB), 2019 WL 8370790, at *2 (D. Minn. Dec. 10, 2019), *R. & R. adopted*, No. 18-CV-2817 (PJS/HB), 2020 WL 563941 (D. Minn. Feb. 5, 2020), *aff'd*, No. 20-1353, 2020 WL 4876327 (8th Cir. June 1, 2020) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a plaintiff's claims to be facially plausible,

they must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts should construe *pro se* complaints liberally, but a *pro se* plaintiff must still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court need not "divine the litigant's intent and create claims that are not clearly raised," nor "read or construct an argument into a civil-rights pleading." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004). Courts are also not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 915.

The Court understands Mr. Fields's two primary allegations to be that Defendants, while working as Minnesota DOC employees, conspired to encourage other inmates to assault him, and deprived him of necessary medical treatment, both in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (SAC at 4, 8, 27, 36.) *See also* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.") Although less prominent in the SAC, the Court understands Mr. Fields also alleges MCF-Rush City staff members have used excessive force against him. (SAC at 7, 16–17, 20, 29.) Based on these violations, Mr. Fields brings this Title 42 U.S.C. § 1983 action.

To bring a § 1983 action, Mr. Fields must sufficiently allege that Defendants were state actors, and that they acted under color of state law to deprive him of one or more

federal constitutional rights. Mr. Fields has established only the first of these three elements.

Defendants are state actors because all Defendants are alleged to have violated Mr. Fields's rights while performing employment duties on behalf of Minnesota at a state prison, MCF-Rush City. "If a defendant is being sued for acts or omissions that occurred while he or she was acting as an employee of a state or local government, then that defendant is presumed to be a state actor for § 1983 purposes." *Prowell v. PK*, 09-CV-2409 (JRT/JJK), 2011 WL 3610410, at *5 (D. Minn. May 24, 2011) (citing *West v. Atkins*, 487 U.S. 42, 49 (1988) (stating that state employment is sufficient to find defendants are state actors)), *R. & R. adopted*, 09-CV-2409 (JRT/JJK), 2011 WL 3609594 (D. Minn. Aug. 16, 2011), *aff'd sub nom. Prowell v. Schock*, 469 F. App'x 493 (8th Cir. 2012).

Mr. Fields has not plausibly alleged facts which, if proven true, would demonstrate that defendants violated his federal constitutional rights while acting under color of state law. *West,* 487 U.S. at 48. "[C]ivil-rights claimants must plead facts showing each defendant's personal involvement in alleged constitutional wrongdoing." *Prowell*, 2011 WL 3610410, at *4 (citing *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999)).

Here, Mr. Fields alleges constitutional violations in Defendants' individual capacities. *See Berts*, 2021 WL 1732257, at *2. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)). Thus, to survive Defendants'

11

Motion to Dismiss, Mr. Fields's SAC must plausibly allege what each Defendant did—or did not do—while they acted under state authority, to violate his constitutional rights.

### 1. Failure to Protect

Most of Mr. Fields's claims relate to his failure to protect claim. The Supreme Court has interpreted the Eighth Amendment to impose duties on prison officials to, *inter alia*, take reasonable measures to guarantee the safety of the inmates[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984); *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010)). This includes a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted).

The question, then, is whether Mr. Fields has sufficiently alleged a claim regarding Defendants' alleged failure to protect him. This requires Mr. Fields to plausibly allege that he faced "a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk.'" *Vandevender v. Sass*, 970 F.3d 972, 977 (8th Cir. 2020) (quoting *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992)). In this Circuit, a "pervasive risk of harm" is not plausibly alleged by pointing to a single incident or isolated incidents, although it does not require pleading "a reign of violence and terror in the particular institution." *Id.* (quoting *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991)). A failure to protect pleading is sufficient where it alleges violence "occur[s] with sufficient frequency that prisoners are put in reasonable fear for their safety" and prison officials are "reasonably apprise[d] . . . of the existence of the problem and the need for protective measures." *Id.* (cleaned up). Thus, the question is further refined to whether Mr. Fields has pleaded a

plausible allegation against each individual Defendant that there have been sufficiently frequent incidents putting him in reasonable fear for his safety and reasonably apprising Defendants of the existence of the problem and the need for protective measures.

Mr. Fields's claims are generally that Defendants ordered other inmate assaults against him; relocated him to dangerous housing units to increase the likelihood he would be assaulted; offered inmates sexual favors in exchange for assaulting him; falsely accused him of committing sexual assaults against staff members; provided other inmates with weapons and opportunities to assault him; and falsely accused him of various actions to encourage retaliatory assaults against him. Mr. Fields's specific allegations about actions taken by each individual Defendant are lengthy, but they are also formulaic and conclusory.

Mr. Fields alleges that Defendant Ashlee Berts knew that he had a history of fights with Mr. Paige, but still recklessly transferred the two of them into the same facility, knowing this would likely cause Mr. Paige to assault Mr. Fields; falsely told staff he was a "snitch" and had formerly sexually assaulted staff; falsely told inmates that Mr. Fields had denied them programming and treatment when it was actually OSI denying these opportunities; and participated in a corrupt operation to order violence against Mr. Fields. (SAC at 6–7, 12, 14, 22.)

Mr. Fields alleges that Defendant Lt. Gary Peterson collaborated with other staff to reveal a confidential report stating that Mr. Fields had sexually assaulted other staff; falsely told gang members that Mr. Fields was a "snitch"; wrongfully altered his tablet calendar; ordered gang members to assault him; collaborated with staff to organize an attack on him; targeted him for sexual discipline but failed to similarly discipline other inmates; organized

a prison riot to implicate him; caused him to fear assaults; worked with an inmate named "Corn" to have him assaulted; falsely told other staff that he had assaulted female staff; knew that he and Mr. Paige were incompatible; targeted him by writing false reports, taking his personal property, and planting evidence; and organized assaults on him with his psychologist, Defendant Michelle Saari. (*Id.* at 12–14, 18, 22, 24.)

Mr. Fields alleges that Defendant Rebecca Fratzke knew that Mr. Paige and he should not be housed in the same facility; knew that Mr. Paige created a risk to Mr. Fields's safety; allowed Mr. Paige to be transferred to MCF-Rush City; and failed to prevent Mr. Paige's attack on him. (*Id.* at 13.)

Mr. Fields alleges that Defendant Scott Hadrava targeted him for sexual discipline, but did not similarly discipline other inmates; knew Mr. Paige and Mr. Fields had a history of fights; participated in a corrupt operation to order violence against him; failed to prevent Mr. Paige from assaulting him; failed to prevent Mr. Paige from being transferred to MCF-Rush City; conspired with Defendant Stacey Olson to prevent his future parole; and targeted him by writing false reports, taking his personal property, and planting evidence. (*Id.* at 13–14, 22.)

Mr. Fields alleges that Defendant Robert Steele failed to protect him from Mr. Paige's attack, instead holding Mr. Fields's arms so that Mr. Paige could further harm him; ignored his statements that he could not breathe and had medical problems during Mr. Paige's attack; and sprayed him in the mouth with mace and placed a sleeve over his head, which Mr. Fields alleges was unnecessary and excessive force. (*Id.* at 16–17.)

Mr. Fields alleges that Defendant B. Tatum participated in a team that organized assaults against him; spread false rumors that Mr. Fields sexually assaulted staff and "snitched"; provided other inmates with metal weapons to use in assaults against him; ordered staff to give his mail and kites (the term for an inmate's written request for something directed to the prison facility) to gang members; retaliated against him by ordering inmates to assault him; confiscated legal papers, notes, and monthly logs from him; is an ongoing threat to his safety; and ordered offenders to assault him. (*Id.* at 18–19, 22, 28.)

Mr. Fields alleges that Defendant Paul Schnell failed to prevent an assault against him; incentivized inmates to assault him by falsely telling them that he had previously killed a police officer; and allowed officers to create and spread false rumors about him to create a risk to his safety. (*Id.* at 35–36.)

Mr. Fields alleges that Defendant Amanda Biggins told lies that he had assaulted women. (*Id.* at 15.)

Mr. Fields alleges that Defendant Stacy Olson conspired with Defendant Hadrava to prevent his future parole; assaulted him; knew of Mr. Paige's threats against him but did not prevent Mr. Paige's transfer to MCF-Rush City; assigned an inmate to watch him; and told lies to provoke assaults against him. (*Id.* at 14, 32–33.)

Mr. Fields alleges that Defendant Watrin participated in attacking him; knew of his incompatibility with Mr. Paige but moved him to a unit with Mr. Paige; knew Mr. Paige presented a danger to him, but disregarded his safety and failed to prevent Mr. Paige's attack on him; created a prison riot; falsely told inmates that he was a "crip" and housed

him with dangerous gang members; placed him in segregation to create the illusion that he was dangerous; confiscated legal papers, notes, and monthly logs from him; orchestrated attacks on him; placed Mr. Cosey in his cell; and falsely told inmates that he was a sex offender to provoke assaults against him. (*Id.* at 21–22.)

Mr. Fields alleges that Defendant Trevor Brewer used excessive force against him by spraying him with an entire bottle of mace; informed gang members that he was a sex offender and ordered them to attack him; failed to prevent attacks against him; had a personal vendetta against him; placed him in a dangerous tier without good cause; and placed him in units where he would face threats. (*Id.* at 7, 19–20.)

Mr. Fields alleges that Defendant J. Charbeau knew about Mr. Paige's threats to Mr. Fields's life and failed to protect him and prevent Mr. Paige's attack; knew that he had been placed in a dangerous tier but took no actions to protect him; and opened his door so that he could be assaulted by other inmates. (*Id.* at 17–18.)

Mr. Fields alleges that Defendant Kristy Shoemaker falsified a disciplinary report to state that he had inappropriately revealed his genitals to her, and then submitted that false report intending him to be civilly committed and physically assaulted. (*Id.* at 24.)

Mr. Fields alleges that Defendant Tom Soles conspired with other members of his treatment team to have him civilly committed as a dangerous person; lied to staff and inmates; told staff and inmates he should be assaulted; rewarded gang members with favors for assaulting him; told lies that he had sexually assaulted staff, resulting in his inability to see a female therapist; placed him in a cell with a sex offender to provoke an assault;

authorized attacks against him; and conspired to create a harmful environment for him. (*Id.* at 20–21.)

Mr. Fields alleges that Defendant Michelle Saari knew about, ordered, approved, and helped to organize Mr. Paige's assault on him; tried to have him civilly committed; and showed indifference to his safety. (*Id.* at 24–25.)

Mr. Fields alleges that Defendant Eric Rasmussen knew of threats to his safety and incompatibilities with other inmates but failed to protect him; placed him in dangerous units; and allowed inmates to threaten, assault, target, and have control over him. (*Id.* at 14–15.)

Mr. Fields alleges that Defendant J. Pugh conspired to have him attacked; failed to prevent the attack by Mr. Paige; and upheld a false disciplinary report that he had revealed his genitals to Defendant Shoemaker, for which he faced 30 days of segregation. (*Id.* at 16, 24.)

Mr. Fields alleges that Defendant Miranda Stenlund saw him being attacked by Mr. Paige; wrote a false report about the details of his fight with Mr. Paige; told him that the Defendants could make things worse for him, including having him killed; and told him segregation was the safest place for him. (*Id.* at 26.)

Mr. Fields alleges that Defendant Kenneth Peterson conspired with an inmate named "Corn" to have him assaulted; confiscated legal papers, notes, and monthly logs from him; organized hatred towards him with the goal of provoking assaults; collaborated with other staff to tell inmates lies that he was a sex offender; ordered gang member assaults on him; worked with other Defendants to have inmates target him; falsely told inmates that he had

killed a police officer and had sexually assaulted female staff to provoke assaults; created a dangerous environment; and failed to protect him from attacks. (*Id.* at 14, 22–23, 34.)

Mr. Fields alleges that Defendant Vickie Janssen knew of Mr. Paige's attack but allowed it to occur; failed to protect him; and allowed her subordinates to harm him. (*Id.* at 29–30.)

Mr. Fields alleges that Defendant Michelle Smith had his documents and legal notes, logs, and papers confiscated from him; tampered with his legal and special mail; allowed threats to his safety; and had the authority to transfer him but failed to do so. (*Id.* at 34–35.)

Mr. Fields alleges that Defendant Barnes organized a department-wide plan to have him assaulted and civilly committed; knew he had been assaulted by Mr. Paige in the past; knew groups had threatened him; approved of threats staff made against him; lied about kites that he had filed; placed him in units with dangerous offenders to cause him fear; told lies to inmates that he was a police officer; created an environment of fear and threats of violence; ordered assaults or disciplinary actions against him; and promoted hatred of him with the goal of having him civilly committed. (*Id.* at 27–29.)

Other than naming them in this action, Mr. Fields alleges no specific unlawful actions taken by Defendants Heather Emerson or Nelson, Allison Hunt, Tammy Beavens, John Doe (Tawny Kraemer); John Doe (SORT); John Doe (CIT); John Doe (IISO); and John Doe.

Although Mr. Fields's SAC is lengthy, the allegations of a broad conspiracy—and of the individual actions taken in support of that conspiracy—lack depth, are formulaic,

and are often conclusory, leading the Court to draw the reasonable inference that Mr. Fields fit Defendants' alleged actions into his preexisting beliefs about the alleged broader conspiracy. Regarding that broader conspiracy, the Court finds that the allegations as pleaded—that these 30 Defendants each conspired, across a range of roles and units, based on varying motivations and levels of alleged knowledge, through a variety of direct and indirect actions, to subject Mr. Fields to coordinated assaults by themselves and by inmates, and to condone or engage in sexual activities with inmates—fail to plausibly allege that any Defendant's individual actions in the alleged conspiracy to expose Mr. Fields to danger violated his Eighth Amendment right to be protected by MCF-Rush City employees. "Vague allegations of a conspiracy to violate constitutional rights do not plausibly support a claim." *Williams v. City of Sherwood*, 947 F.3d 1107, 1111 (8th Cir. 2020). Plausible claims require factual allegations that allow the Court to draw reasonable inferences the Defendants committed the alleged misconduct. *Iqbal*, 556 U.S. at 678.

Viewing the SAC's allegations as true, the Court finds it still cannot draw a reasonable inference that Defendants have conspired to commit, and have committed, such a vast web of the alleged misconduct against Mr. Fields based on the SAC. Accordingly, this Court recommends that Defendants' Motion, insofar as it seeks to dismiss Mr. Fields's failure to protect claim, should be granted, and Mr. Fields's SAC be dismissed as to his failure to protect claims for failure to state a claim upon which relief can be granted.

## 2.    Deliberate Indifference, Res Judicata, and Collateral Estoppel

Turning next to Mr. Fields's claim that Defendants denied him necessary medical treatment, demonstrating their deliberate indifference to his serious medical need in

violation of his Eighth Amendment rights, the Court finds these allegations equally unavailing. Mr. Fields's allegations are generally that he suffers from a sexual exhibitionism disorder; that the appropriate treatment for this disorder is exhibitionism programming; that this programming is offered to other inmates who suffer from his disorder, but that he is denied this necessary medical treatment; and that this programming consists of permitting prisoners to engage in sexual behaviors with, or in the presence of, DOC employees.

Defendants argue that the doctrines of res judicata (claim preclusion) or collateral estoppel (issue preclusion) preclude Mr. Fields from relitigating allegations of deliberate indifference identical to those already raised in *Huot*. (Defs.' Mem. Supp. Mot. Dismiss at 15–17.) Thus, before determining if Mr. Fields has adequately pleaded a claim for relief regarding deprivation of medical care in violation of the Eighth Amendment, the Court must first determine the extent to which this claim is barred by the court's prior decisions in *Huot*.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). Thus, if Mr. Fields raised this Eighth Amendment claim—or could have raised it—in *Huot* based on the same allegations, res judicata precludes that claim's relitigation in the instant action. Likewise, "[u]nder the doctrine of collateral estoppel, . . . [where] the second action is upon a different cause of action[,] the judgment in the prior suit precludes relitigation of issues actually litigated and necessary

to the outcome of the first action." *Id.* (citing *Parklane Hosiery*, 439 U.S. at 326 n.5 (citations omitted)). Thus, if the *Huot* court decided issues that are essential to Mr. Fields's Eighth Amendment claim in the instant action, collateral estoppel precludes Mr. Fields from relitigating those issues here.

In *Huot*, Mr. Fields alleged suffering from the same sexual exhibitionism disorder, and claimed DOC Defendants denied him necessary medical care. *Huot*, 2019 WL 6038532, at *1. He brought a Title 42 U.S.C. § 1983 claim, part of which he brought for violations of his Eighth Amendment right to adequate medical care based on similar allegations to those made in the instant action. *Id.* Specifically, in *Huot*, Mr. Fields alleged that he had a right to particular programming for his exhibitionism, including the ability to meet with female therapists. *Id.* at *10. The *Huot* court recommended dismissal of Mr. Fields's Eighth Amendment claims at summary judgment, finding that "no reasonable jury could conclude that the DOC Defendants ignored or refused to treat any objectively serious medical need or exhibited a mental state akin to criminal recklessness with respect to any aspect of his mental-health care[,]" and the district court agreed and dismissed these claims. *Id.* at *11; *see also Henry*, 2019 WL 6037425, at *1–2.

Critical to the instant action, the *Huot* court found that, although Mr. Fields believed he had a right to particular exhibitionism programming (including access to female staff members and opportunities to engage in sexual behaviors during treatment with them) and believed that the DOC's denial of this treatment violated his Eighth Amendment rights, "Mr. Fields's disagreement with those assessments, and his assertion to the contrary—that his treatment *requires* him to meet with women—[were] insufficient, as a matter of law, to

support an Eighth Amendment deliberate-indifference claim." *Huot*, 2019 WL 6038532, at \*10 (emphasis in original) (citing *Barrow v. Buren*, No. 9:12-CV-1268 (MAD/CFH), 2015 WL 417084, at \*17 (N.D.N.Y. Jan 30, 2015) (rejecting plaintiff's Eighth Amendment claim for failure to treat exhibitionism because his claims demonstrated only a "[d]isagreement over the appropriate programming")). The district court agreed and dismissed Mr. Fields Eighth Amendment claim with prejudice. *See Henry*, 2019 WL 6037425, at \*2.

Considering Defendants' res judicata defense in light of *Huot*, "[r]es judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Lane*, 899 F.2d 737, 742. Here, the *Henry* court's adoption of the *Huot* court's findings was properly before the *Henry* court on Mr. Fields's federal claims, was a final judgment on his claims' merits at the summary judgment stage, and involved the same Eighth Amendment medical deprivations claims and allegations against DOC employees, some of whom are the same, and some of whom are in privity with the instant Defendants. *See Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983) ("A plaintiff may not sue a succession of state employees on the same claim solely on the ground that each employee is not identical to previously sued employees.") Thus, this same Eighth Amendment medical deprivations claim against the same, or effectively the same, Defendants is precluded by res judicata.

Considering Defendants' collateral estoppel defense in light of *Huot*,

> in the Eighth Circuit, the party asserting collateral estoppel must prove five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*In re Miller*, 403 B.R. 804, 813 (Bankr. W.D. Mo. 2009). Here, Mr. Fields is the same Plaintiff that the Defendants seek to preclude from relitigating the same issue regarding his same alleged right to exhibitionism programming. Mr. Fields actually litigated these issues before the *Huot* court at the summary judgment stage, and based on the *Huot* court's recommendation, the *Henry* district court issued a final judgement finding Mr. Fields's allegations insufficient, as a matter of law, to support an Eighth Amendment deliberate-indifference claim. Thus, these same allegations, brought to support an Eighth Amendment claim, are likewise insufficient, and are precluded by the doctrine of collateral estoppel.

However, out of an abundance of caution, and given the complexity of Mr. Fields's instant allegations and the difficulty of ensuring they are fully captured by the recommendations and decisions of the *Huot* and *Henry* courts, the Court will consider the sufficiency of Mr. Fields's pleadings regarding Defendants' alleged deliberate indifference to Mr. Fields's serious medical need under a Motion to Dismiss standard.

"The Eighth Amendment obligates state prison officials to provide inmates with medical care." *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005) (citing *Estelle*, 429 U.S. at 103. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. "To survive

a motion to dismiss, a claim of deliberate indifference to medical needs in violation of the Eighth Amendment must allege both that the plaintiff 'suffered from objectively serious medical needs' and that the defendant 'actually knew of but deliberately disregarded those needs.'" *Tanaka Birdo, Plaintiff, v. Dave Hutchison, Sheriff; & Jocelyn, RN, Defendants.*, No. 20-CV-1925 (MJD/ECW), 2021 WL 3743521, at *5 (D. Minn. July 28, 2021) (quoting *Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (cleaned up)), *R. & R. adopted sub nom. Birdo v. Hutchinson*, No. 20-CV-1925 (MJD/ECW), 2021 WL 3741484 (D. Minn. Aug. 24, 2021). This means that a plaintiff must allege a defendant acted in a way comparable to criminal recklessness, not simply negligently. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

Turning to the allegations made in the SAC in light of the subjective and objective pleading requirements to analyze deliberate-indifference, the Court understands Mr. Fields to generally allege that he objectively suffers from an exhibitionism disorder; that the appropriate medical treatment for his disorder is exhibitionism programming; and that the programming properly involves treatment by female therapists and opportunities to engage in sexual activities in the presence of, or with, DOC employees. Specifically, Mr. Fields alleges that Defendant Lt. Gary Peterson told staff to deny him programming (*id.* at 28); Defendant Paul Schnell failed to ensure provision of adequate care and programming and denied him adequate care (*id.* at 35); Defendant Stacy Olson denied him medical care and programming (*id.* at 33); Defendant Trevor Brewer denied him medical care when a nurse tried to treat him (*id.* at 20); Defendant Kristy Shoemaker showed deliberate indifference

to his medical care after Mr. Paige assaulted him (*id.* at 24); Defendant Michelle Saari denied his request to see a new female psychologist, even though she allowed other inmates to meet with a female psychologist (*id.* at 25); Defendant Vickie Janssen allowed her subordinates to deny him care, including preventing him from seeing female officers while in segregation, and disregarded his right to adequate care (*id.* at 30); Defendant Michelle Smith failed to use her authority to ensure he received equal health and therapy treatment by refusing to allow him to see female officials (*id.* at 35); and Defendant Barnes denied him a sick cell and medical attention (*id.* at 29).

Assuming, without deciding, that Mr. Fields has sufficiently alleged that he objectively suffers from an exhibitionism disorder, this Court finds it highly implausible that the appropriate medical treatment for such a disorder is the exhibitionism programming that he describes, sexual behavior in the presence of, or even with, members of staff. Thus, Mr. Fields's allegations—that Defendants subjectively acted with deliberate indifference to his need for treatment by denying him such an unlikely treatment—fail to state a plausible Eighth Amendment claim. Furthermore, it is not clear what substantial risk of harm, if any, the alleged inadequate treatment (of no exhibitionism programming, no access to female therapists, and no opportunities to engage in sexual activities with DOC employees) has or will cause Mr. Fields, as his contention appears to simply be that it is unfair for other inmates to have access to these alleged therapeutic treatments that he does not. Yet mere disagreement over the appropriate programming, as alleged in the SAC, does not support an Eighth Amendment claim for deliberate indifference. *See Huot*, 2019 WL 6038532, at *10 (citing *Barrow*, 2015 WL 417084, at *17). Thus, Mr. Fields's SAC fails

25

to adequately allege that his objective medical needs have been subjectively disregarded by the denial of the therapeutic treatments that he describes.

Viewing the allegations made in the SAC in the light most favorable to Mr. Fields, the Court finds that Mr. Fields fails to state a plausible Eighth Amendment deliberate indifference claim. Accordingly, this Court recommends that Defendants' Motion, insofar as it seeks to dismiss the claims of deliberate indifference to Mr. Fields's serious medical needs, should be granted, and Mr. Fields's SAC be dismissed as to his deliberate indifference claims for failure to state a claim upon which relief can be granted.

### 3.    Excessive Force

While less prominent in Mr. Fields's SAC and receiving little argument in the instant Motion to Dismiss, Mr. Fields also alleges several instances in which Defendants used excessive force. When an inmate alleges an excessive force violation, courts must determine "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The focus is on the nature of the force used and "whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Id.* at 39 (citing *Hudson*, 503 U.S. at 7). Not every touch by a prison employee is an automatic violation of a prisoner's constitutional rights. *See Hudson*, 503 U.S. at 9. The Eighth Amendment's prohibition of cruel and unusual punishments "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37–38. "An inmate who complains of a 'push or shove' that causes no

discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citation omitted). However, "[w]hile a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation." *White v. Holmes*, 21 F.3d 277, 281 (8th Cir. 1994) (citing *Cummings v. Malone*, 995 F.2d 817, 822–23 (8th Cir. 1993) (noting that the extent of the injury "is a relevant factor as to whether or not the punishment inflicted was cruel and unusual.")). Therefore, to adequately plead an excessive force claim, Mr. Fields must plausibly allege a use of more than *de minimus* physical force that was malicious or sadistic and caused an actual injury.

Additionally, both incidents alleged involve the use of mace. This Circuit has found pepper spray or mace may be used in a limited way to control a "recalcitrant inmate" because it is relatively mild force when compared to some other forms of force. *Burns v. Eaton*, 752 F.3d 1136, 1139–40 (8th Cir. 2014) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)). However, where the use of a chemical agent involved no warning, had no purpose other than inflicting pain, or where its use was in "super-soaker" quantities, courts in this Circuit have found a plausible Eighth Amendment violation. *Id.* (citing *Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 873 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F.3d 727, 730, 732 (8th Cir. 2002)).

Here, Mr. Fields alleges that two Defendants used excessive force against him. First, Mr. Fields alleges that Defendant Brewer used excessive force against him by spraying him with "a whole Bottle of mace . . . excessively" that hit him "on [his] face[,]" and that afterwards, he was denied medical treatment by a nurse for his "injuries" even though he "showed [a] nurse Blood from [sic] Cut to the Head." (SAC at 20.) The context of

Defendant Brewer's use of force appears to be as follows: Mr. Fields and Mr. Cosey, another inmate, had engaged in a physical altercation in which it appears Mr. Fields received the cut to his head and possibly other injuries. (*Id.*) Defendant Brewer arrived and, taking Mr. Fields's allegations as true, dispensed a whole bottle of mace into Fields's face. (*Id.*)

Mr. Fields has not alleged a direct injury from Defendant Brewer's use of mace and, in some cases, courts have held that the use of mace or capsicum spray is *de minimis* where there are no lingering effects. *See Jones*, 207 F.3d at 495. However, in *Treats*, the Eighth Circuit held that "[n]o lasting injury is necessary to make out an Eighth Amendment violation" if a defendant's force was not used for a legitimate purpose (such as breaking up a fight), but instead "was inflicted for the purpose of causing harm." 303 F.3d at 873. "[T]he extent of injury . . . is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Larson v. Jesson*, No. 11-CV-2247 (PAM/LIB), 2018 WL 3352926, at *6 (D. Minn. July 9, 2018) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To answer the question of whether Defendant Brewer's use of mace on Mr. Fields was for a legitimate purpose or instead was "the unjustified infliction of harm," the Court looks to the quantity of mace used.

Courts in this Circuit have found that, where a plaintiff alleged that a defendant "emptied an entire can of MK9 mace on him in 'super soaker quantities[,]'" such a claim was adequately pleaded at the screening phase. *Scott v. Gibson*, No. 5:19-CV-00280 JM-

28

PSH, 2019 WL 5777719, at *1–2 (E.D. Ark. Oct. 17, 2019) (citation omitted), *R. & R. adopted*, No. 5:19-CV-00280 JM-PSH, 2019 WL 5755891 (E.D. Ark. Nov. 5, 2019); *see also Larson*, 2018 WL 3352926, at *6 (citing *Burns*, 752 F.3d at 1140 (finding that if plaintiff alleged that defendants "used a large quantity of pepper spray on him[,]" such a claim might have sufficiently alleged an excessive force claim based on *Burns*, which noted that spraying super-soaker quantities of pepper spray may be an excessive use of force)).

Taking the facts alleged as true, the Court finds that the allegations adequately set forth an excessive force claim against Defendant Brewer based on the excessive quantity of mace that Mr. Fields alleges Defendant Brewer used. Such an amount creates a reasonable inference that the force was meant to inflict unjustified pain, rather than being used for a legitimate purpose, and this inference is sufficient to allow this allegation to survive a motion to dismiss at this stage.

In the second instance, Mr. Fields alleges that Defendant Steele, during the incident in which Mr. Paige assaulted Mr. Fields, sprayed him in the mouth with mace and placed a sleeve over his head. (*Id.* at 16–17.) Mr. Fields alleged this caused him to choke and try to catch his breath, and to only be able to have one eye opened. (*Id.* at 17.) Accepting Mr. Fields's version of events as true, the use of mace and a hood to break up a fight between two inmates is reasonable. Mr. Fields alleges he was maced in the mouth. He does not allege that Defendant Steele deliberately aimed at Mr. Fields's mouth, or that Defendant Steele held Mr. Fields's mouth open and aimed mace into his mouth. In the context of breaking up a violent altercation, it is not possible to have the mace land in any precise area. In addition, Mr. Fields does not allege injury beyond short-term responses of

breathlessness and eye irritation. *See Hobbs v. Foreman*, 2008 WL 4542752 (E.D. Ark. 2008) (finding plaintiff-inmate failed to support an Eighth Amendment claim where a prison guard sprayed him with pepper spray without lasting ill effects, which amounted to a *de minimis* use of force only); *see also Hemphill v. Ligon*, 2007 WL 4532919 (E.D. Ark. 2007) (finding use of pepper spray on an inmate arguing with another inmate was not an excessive use of force violating the Eighth Amendment).

Viewing the allegations made in the SAC in the light most favorable to Mr. Fields, the Court finds that Mr. Fields has adequately pleaded an Eighth Amendment excessive force claim against Defendant Brewer, but fails to state a plausible excessive force claim against Defendant Steele. Accordingly, this Court recommends that Defendants' Motion, insofar as it seeks to dismiss Mr. Fields's claims of excessive force, should be denied as to Defendant Brewer, but granted as to all other Defendants, and Mr. Fields's SAC be dismissed as to all Defendants but Defendant Brewer for failure to state a claim upon which relief can be granted as to excessive force.

### B.    Mr. Fields's Motion for Permission and Motion for a Writ

Finally, turning to the two Motions filed by Mr. Fields after Defendants' Motion to Dismiss, the Court recommends that these Motions be denied.

As to Mr. Fields's Motion for Permission, the court understands the Motion to request permission to file the Motion for a Writ that Mr. Fields filed simultaneously. (Pl.'s Mot. Permission at 1.) The Motion for Permission also details Mr. Fields's desire for Defendants to undergo "Mandatory Cotton Swabbs [sic] in the mouth[,]" a test to be administered by the FBI. (*Id.*) Finding that Mr. Fields has already filed the Motion for a

Writ he requested the Court's permission to file, and finding no legal or factual basis upon which this Court can order the FBI testing relief that Mr. Fields seeks, the Court recommends that Mr. Fields's Motion for Permission be denied.

As to Mr. Fields's Motion for a Writ, the Court also recommends denial of this Motion. Writs of habeas corpus ad testifacandum are used to "ask the Marshal's Service to produce a detained individual so that the individual can give testimony in a legal proceeding." *Lanners-Ford v. Minnesota*, No. 20-CV-1206 (PAM/HB), 2020 WL 8839489, at *1 (D. Minn. June 9, 2020). Pursuant to 28 U.S.C. § 2241, which empowers federal courts to grant writs of habeas corpus, a court may grant a writ when "[i]t is necessary to bring [a prisoner] into court to testify or for trial." 28 U.S.C. § 2241(c)(5). Whether to grant such a writ is within the court's discretion. *U.S. v. Goldenstein*, 456 F.2d 1006, 1012 (8th Cir. 1972). However, if such a writ is brought during dispositive motion practice, the writ is not yet ripe. *See Laughlin v. Stuart*, No. 19-CV-2547 (ECT/TNL), 2021 WL 1850658, at *1 (D. Minn. Apr. 27, 2021).

Here, the Order regarding briefing on Defendants' Motion to Dismiss contemplates that the Court will entertain dispositive motions without a hearing, unless the Court determines one is necessary after the parties' papers are submitted. (Order at 2, Dkt. No. 73.) Defendants have brought a timely dispositive Motion to Dismiss, and the Court, having received full briefing from the parties, has determined that a hearing is not necessary. Thus, at present, there is no hearing or trial scheduled before the Court in this matter, and yet Plaintiff has petitioned the Court for a writ to testify at Defendants' trial. The Court may not grant a writ for a future hearing or trial that may or may not take place.

*See Minn. Pub. Utilities Comm'n v. F.C.C.*, 483 F.3d 570, 582 (8th Cir. 2007) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (explaining that federal courts have limited jurisdiction to decide only "actual cases or controversies ripe for review" under Article III of the Constitution, and noting that "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'")). Accordingly, finding that Mr. Fields's Motion for a Writ of Habeas Corpus Ad Testificandum is not ripe for adjudication, the Court recommends that Mr. Fields's Motion be denied.

## III.    RECOMMENDATION

In sum, having read the parties' briefs carefully in Defendants' Motion to Dismiss, and having construed Mr. Fields's pleadings liberally, the Court finds that he has not adequately alleged that the described actions of any Defendant in their individual capacity violated his Eighth Amendment rights. Finding that Mr. Fields's SAC largely, although not entirely, fails to plausibly allege such violations or resulting rights to relief, this Court recommends that Defendants' Motion to Dismiss be granted in part and denied in part, and Mr. Fields's SAC be dismissed with prejudice as to his failure to protect and deliberate indifference claims for failure to state a claim, but allowed to proceed on his excessive force claim against Defendant Brewer. Consequently, the Court recommends that Mr. Fields's Motion for Permission and Motion for a Writ should both be denied as moot.

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (Dkt. No. 68) be **GRANTED in part** and **DENIED in part**;

2. Plaintiff's Motion Requesting Permission to File from U.S. District Judges and Defendants (Dkt. No. 90) be **DENIED**;

3. Plaintiff's Motion for a Writ of Habeas Corpus Ad Testificandum (Dkt. No. 91) be **DENIED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: January 25, 2022                          *s/ John F. Docherty*
                                          JOHN F. DOCHERTY
                                          United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).