UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Victor Fields,

      Plaintiff,

v.

Ashlee Berts, Lt. Gary Peterson, Rebecca Fratzke, Scott Hadrava, Robert Steele, B. Tatum, Paul Schnell, Amanda Biggins, Stacy Olson, Watrin, Trevor Brewer, J. Charbeau, Heather Emerson or Nelson, Allison Hunt, Tammy Beavens, Kristy Shoemaker, Tom Soles, Michelle Saari, Eric Rasmussen, J. Pugh, Miranda Stenlund, Kenneth Peterson, Vickie Janssen, Michelle Smith, John Doe (Tawny Kraemer), Barnes, John Doe Special Operations Response Team Members, John Doe Crisis Intervention Teams (Staffs/Officers), John Doe Internal Investigative Staffs & Officers, John Doe,

      Defendants.

File No. 20-cv-2227 (ECT/JFD)

**ORDER**

---

    Pro se Plaintiff Victor Fields—an inmate in the Minnesota state prison system—sued several state agencies and state officials under 42 U.S.C. § 1983. ECF Nos. 1, 5, 8. The core allegation of Fields's lawsuit is that Defendants have conspired and are conspiring to have other inmates physically assault him and to harm him in other ways.

    The case is before the Court on a Report and Recommendation issued by Magistrate Judge John F. Docherty. ECF No. 112. Magistrate Judge Docherty recommended granting in part and denying in part Defendants' Motion to Dismiss [ECF No. 68], denying Fields's

Motion Requesting Permission to File [ECF No. 90], denying Fields's Motion for a Writ of Habeas Corpus Ad Testificandum [ECF No. 91], and entering judgment against Fields. ECF No. 112 at 33.  Because Fields has objected, the Report and Recommendation is reviewed de novo pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3).  Having conducted that review, and for the reasons set forth below, the Report and Recommendation will be accepted, except to a limited extent regarding certain of Fields's allegations that some defendants knew of the risk of serious harm to Fields, yet disregarded that risk by placing Fields in proximity to fellow inmate Toparious Paige.

As summarized in the Report and Recommendation, Fields alleges that in September 2019, an inmate named Toparious Paige assaulted him shortly after the Department of Corrections transferred Paige to MCF-Rush City.  ECF No. 8 at 6, 12–14, 16–17, 21–22, 26–27, 32.  Fields alleges that certain prison officials knew or should have known that he and Paige were incompatible because a jury had convicted Fields of murdering Paige's brother, and because Paige had assaulted Fields in a different facility. *Id*. at 13–14, 22, 29, 33.

Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984).  In prohibiting "cruel and unusual punishments," the Eighth Amendment imposes "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quotation omitted); *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010).  But "[a]s prisons are inherently dangerous environments, '[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison

officials responsible for the victim's safety.'" *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). "A prison official 'violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates.'" *Id.* at 975 (quoting *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)).

An inmate's claim that prison officials failed to protect him from harm under the Eighth Amendment has both an objective and a subjective component. *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017). To be liable, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Under the objective component, the inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm" to the inmate. *Id.* at 834. The subjective prong asks whether the prison official was "deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "To establish defendants' deliberate indifference in failing to protect from assault by another inmate, [Fields] must show that he was faced with a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk." *Vandevender*, 970 F.3d at 977 (quotation omitted). "[M]ere negligence or inadvertence does not rise to the level of deliberate indifference." *Kulkay*, 847 F.3d at 643. Rather, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Id*. (quotation omitted). "The defendant-official's state of mind 'must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.'" *Id.* (citation omitted); *see also Jackson*, 140 F.3d at 1152. And prison officials "may be found

3

free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. "Threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm," and "[a]n inmate's complaints of 'general fear for his safety' do not establish that a defendant 'acted with deliberate indifference by not placing him in protective custody.'" *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016) (citations omitted); *see also Vandevender*, 970 F.3d at 977 (quoting *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991)) (describing "pervasive risk of harm").

The question here is whether Fields's Amended Complaint plausibly alleges that prison officials were aware of the substantial risk of serious harm to Fields from Paige and failed to respond reasonably to that risk. Fields raises allegations against certain Defendants who, he says, personally knew of yet disregarded the danger Paige posed to Fields. These allegations are summarized in turn.

*Ashlee Berts*. Fields alleges Berts "authorized offender transfers between prisons and inform [sic] staffs of verifiable [] incompatibilities to offenders safety." ECF No. 8 at 6. According to Fields, Berts "knew [Fields] and offender Toparious Paige had incompatibility and previously [Fields] was already attacked by this offender in Stillwater Prison . . . because [Paige] believed [Fields] killed his brother." *Id*. Fields alleges that although Berts knew "offender Paige is a life threatening risk to [Fields]," she "still transferred him to MCF-Rush City." *Id*. at 12.

*Rebecca Fratzke*. Fields alleges that Fratzke "knew personally that Toparious Paige offender and [Fields] . . . had incompatibility to keep separate" and that Fratzke "knew the

4

offender was a life threatening risk to [Fields's] safety because [Fields] was accused of killing [Paige's] brother and offender [] Paige already attacked [Fields] at MCF-Stillwater in past—resulting in the incompatibility." *Id.* at 13. Fields alleges that Fratzke "still allowed this offender Paige to be transferred to MCF-Rush to brutally attack [Fields]" and that Fratzke was informed that Paige endangered Fields's safety "but ignored it." *Id*.

*Robert Steele*. Fields alleges that Steele was posted in the hall when Fields was attacked. *Id.* at 16. Fields alleges that Steele "failed to protect [Fields] from the danger other inmates out to attack [Fields]." *Id*. According to Fields, Steele "held [Fields's] arms" while Fields "was kicked and punched by [his] attacker so he could further seriously damage my eye." *Id*.

*Stacy Olson*. Fields alleges that Stacy Olson "knew & was made aware offender Toparious Paige was a verified threat to [Fields's] safety & life threatening risk to [Fields]." *Id.* at 33. According to Fields, Olson "knew [Paige] attacked [Fields] previously before in Stillwater prison some years back," and "knew [Paige] was being transferred to MCF-Rush City" and that "he was in [Olson's] unit Complex 1 East," yet Olson "did not object or prevent the wrong that was occurring." *Id*.

*J. Charbeau*. Fields alleges that J. Charbeau was "personally informed in advanced [sic] that offender Toparious Paige is a verifiable threat to [Fields's] safety & life threatening risk to [Fields]" yet failed to protect Fields from being brutally attacked. *Id.* at 17 ¶ T. Fields also appears to allege that Charbeau was present when he was attacked, prevented Paige from leaving, and failed to protect Fields. *Id*. at 17 ¶ U.

5

*Eric Rasmussen*.  Fields alleges that Eric Rasmussen was "aware and knew of all verifiable threats to [Fields's] safety and offender incompatibility," "failed to protect" Fields, and "instead ordered staff to place [Fields] in units around dangerous threats of violence."  *Id.* at 14–15.

*Barnes*.  Fields alleges Barnes was "personally . . . informed of all verifiable threats to [Fields's] safety and knew [Fields] was previously attacked by same offender Paige in Stillwater" and placed him in units with offenders who threatened his safety.  *Id.* at 27–28.

Here, Fields has alleged that certain prison officials—Defendants Berts, Fratzke, Steele, Olson, Charbeau, Rasmussen, and Barnes—knew specifically of the serious risk of harm to Fields posed specifically by Paige, yet disregarded (or were deliberately indifferent to) that risk when they allowed the transfer or placed Paige with Fields.  Fields has not alleged with particularity the nature of prison officials' knowledge of the risk of serious harm from placing Paige and Fields together (such as what they knew or how they knew it), or the specific measures that prison officials took (or did not take) to prevent any such harm.  But at this stage of the proceedings, a plausible inference may be made from Fields's allegations that each of these defendants knew of and disregarded a substantial, objectively serious risk to Fields's safety.  Construing the Second Amended Complaint liberally and drawing all inferences in the light most favorable to Fields, Defendants' motion to dismiss is denied to the extent that it raises plausible claims against these specific defendants.

As to the remainder of the Report and Recommendation, the Court has undertaken a de novo review and concluded that Magistrate Judge Docherty's analysis and conclusions are correct.

6

For these reasons, and based on all of the files, records, and proceedings in this matter, **IT IS ORDERED THAT**:

1. Plaintiff's Objections to the Order and Report and Recommendation [ECF No. 114] are **OVERRULED** in part;

2. The Order and Report and Recommendation [ECF No. 112] is **ACCEPTED** in part and **REJECTED** in part;

3. Defendants' Motion to Dismiss [ECF No. 68] is **DENIED** insofar as it seeks dismissal of Plaintiff's failure-to-protect claims against Defendants Berts, Fratzke, Steele, Olson, Charbeau, Rasmussen, and Barnes; and is **DENIED** insofar as it seeks dismissal of the excessive force claims against Defendant Brewer; and is **GRANTED** in all other respects;

4. Plaintiff's Motion Requesting Permission to File from U.S. District Judges and Defendants [ECF No. 90] is **DENIED**; and

5. Plaintiff's Motion for a Writ of Habeas Corpus Ad Testificandum [ECF No. 91] is **DENIED**.


Dated:  March 2, 2022                     s/ Eric C. Tostrud
                                          Eric C. Tostrud
                                          United States District Court