# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| VICTOR FIELDS, | Case No. 20-CV-2227 (ECT/JFD) |
| Plaintiff, | |
| v. | |
| ASHLEE BERTS, REBECCA FRATZKE, ROBERT STEELE, STACY OLSON, TREVOR BREWER, JASON CHARBEAU, ERIC RASMUSSEN, and JOSHUA BARNES, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This case is before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 136) pursuant to Federal Rule of Civil Procedure 56. This case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. Mr. Fields, who is incarcerated, sued Defendants under 42 U.S.C. § 1983, alleging that various staff conspired with prisoners to deny him treatment and to assault him while he was a prisoner at the Minnesota Correctional Facility at Rush City ("MCF–Rush City"). (Second Amended Compl. at 1, 4, Dkt. No. 8.)[1] The Court dismissed claims against several defendants but preserved Mr. Fields's failure to protect and excessive force claims. (Order at 7, Dkt. No. 117.)

---

[1] When citing documents filed in the Electronic Court Filing system, the Court uses the page numbers assigned by the system, which are stamped in blue ink on the top of each page.

The remaining Defendants argue that they should prevail at summary judgement because Mr. Fields failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). (Defs.' Mem. Supp. Summary Judgment at 1, Dkt. No. 137.) In response, Mr. Fields argues that he exhausted all available remedies by following grievance procedures to the best of his ability. (Pl.'s Mem. Opp'n Mot. Summary Judgment at 1, 5, Dkt. No. 143.) [2] Because Mr. Fields did not exhaust the available administrative remedies before filing this action, the undersigned recommends granting Defendants' Motion for Summary Judgement in full. Further, because it is now too late for Mr. Fields to remedy his failure to exhaust, the undersigned recommends that the resulting dismissal of Mr. Fields's remaining claims be with prejudice.

## I. BACKGROUND

### A. Factual Background

Mr. Fields's failure to protect claim stems from a fight on September 16, 2019. Mr. Fields alleges that corrections staff transferred another prisoner, Mr. Paige, to MCF–Rush City even though they knew that Mr. Paige was hostile towards Mr. Fields. (Second Amended Compl. at 6, 12–18, 27–29, 32–33.) Mr. Fields claims Mr. Paige assaulted him on September 16, 2019. (*Id.* at 12 ("As a result of this transfer I was obviously set up and never saw it coming and [was] attacked brutally from behind by offender Toparious Paige while on my way to after dinner pill run.").) Mr. Fields claims Mr. Paige previously

---

[2] The Court recognizes that Mr. Fields filed a communication and exhibits with the Court on December 16, 2022. The Court has not considered those filings because Mr. Fields submitted them after the Court closed briefing on the summary judgement motion. (*See* Dkt. No. 146.)

2

attacked him at another prison because Mr. Fields was convicted of murdering Mr. Paige's brother. (*Id.* at 6, 13, 32–33.) In the 2019 fight, Mr. Fields sustained an eye injury which required surgery. (*Id.* at 4, 12.)

Mr. Fields's excessive force claim arises from his allegations that Defendant Brewer, a DOC lieutenant, used a "whole bottle of mace" to subdue Mr. Fields when he was trying to protect himself from an attack by another prisoner, Mr. Cosey. (Second Amended Compl. at 20.) According to Mr. Fields, this incident happened sometime before September 5, 2020 (*Id.*), while Defendants more precisely claim it happened on August 25, 2020 (Defs.' Mem. Supp. Mot. Summary Judgment at 5 n.4).

### B. Grievance Procedure

Minnesota Department of Corrections Policy 303.100 outlines the three-step procedure prisoners must use to raise grievances with prison staff. (Andresen Decl. ¶ 2, Dkt. No. 138.) The procedure requires that prisoners first attempt to informally resolve issues related to their confinement by sending written messages, called "kites," "to the staff person(s) responsible for whatever program, service, or condition is involved, as indicated on the Facility Chain of Command." (*Id.* at ¶ 4.) Prisoners cannot file a formal complaint until they have brought their informal complaint to the top of the chain of command. (*See* Andresen Decl. Ex. 1, at 11 ("The Grievance process is to be used AFTER you have exhausted the Chain of Command. You must write to one person at a time and wait until you have received a response from that person before writing to the next staff."); *see also id.* at 3 ("If the response has been received from the last staff person identified on the Facility Chain of Command, the offender can proceed with filing the grievance.").) A memorandum from

3

the MCF-Rush City Warden's office includes a notation that prisoners should allow seven days for each staff member in the chain of command to respond to kites. (Sletten Decl., Ex. 1 at 7.)

If the informal grievance process does not resolve their complaint, prisoners may then file a formal complaint, also known as a "facility grievance," which is handled within the facility of incarceration, and which can be followed, if necessary, by an appeal to DOC's Central Office. (Andresen Decl. at ¶ 5; *Id.* Ex. 1, at 3.) A prisoner must file a facility grievance "within 30 calendar days of when the issue most recently occurred and no sooner than seven calendar days of when [the prisoner] sent a kite to resolve the issue." (Andresen Decl. at ¶ 5; *Id.* Ex. 1, at 3.) Facility grievance coordinators "date stamp each facility grievance" and return incomplete forms to prisoners with "instructions about how to properly complete the form." (Andresen Decl. Ex. 1, at 3; Sletten Decl. at ¶ 6.)

"If the incarcerated person is dissatisfied with the response to their formal grievance received from the prison facility, the third and final step of the DOC's grievance process allows the incarcerated person to file a grievance appeal with the DOC's Central Office." (Andresen Decl. at ¶ 6). A prisoner appeals to the Central Office by mailing an appeal form to the grievance appeal authority no later than 21 days after the grievance authority signed its response. (*Id.* Ex. 1, at 5.) A prisoner has exhausted the administrative remedies available to them after they receive the decision of the grievance appeal authority, or after 21 days (42 days if the grievance appeal authority notified the prisoner that an extension was issued) have passed since the grievance authority took the matter under advisement. (*Id.* at

4

6. (after this amount of time, "the offender may consider the original grievance decision affirmed and final, and administrative remedies exhausted.").)

Situations implicating physical safety or well-being are an exception to the requirement that prisoners follow this sequence. "Offenders who have received threats to their physical safety or well-being" are allowed to bypass the informal grievance process and submit their formal grievance "directly to the department grievance appeal authority at central office in a sealed envelope marked 'Special Mail.'" (Andresen Decl. Ex. 1, at 3.) There is no indication in the record that Mr. Fields used this "physical safety or well-being" exception at any time during his DOC grievance process. (*See* Andresen Decl. ¶¶ 11–12; Sletten Decl. ¶¶ 10–11.)

### C. Mr. Fields's Administrative Grievances

In support of their Motion for Summary Judgment, Defendants submitted copies of Mr. Fields's kites, facility grievance, grievance appeal, and the responses he received. (Andresen Decl., Ex. 1, Dkt. 138-1.) Mr. Fields submitted a kite to his case manager dated September 13, 2020. (Andresen Decl., Ex. 1 at 16.) It is largely illegible, but Mr. Fields alleged that corrections staff and other prisoners were working together to orchestrate attacks on his life. (*Id.*) Mr. Fields wrote that Mr. Cosey was planted in his cell to assault him. (*Id.*) The reply from the case manager dated two days later reads, "I can't follow this kite I don't know what you're asking? Please in the future don't write on the side, and the bottom of the kite. It is very difficult to follow. Thank you." (*Id.*) [3]

---

[3] Mr. Fields's case manager is not alone in being confused. Mr. Fields's kites allege a large, prolonged conspiracy involving DOC employees and other inmates, the objective of which

5

Mr. Fields submitted a second kite dated September 24, 2020, this time escalating his concerns to the Program Director, Defendant Fratzke, and citing his first kite. (*Id.* at 15.) This kite is more legible and referenced the assault which injured Mr. Fields's eye and left him in "irreparable pain." (*Id.*) In the kite, Mr. Fields claimed that his case manager approved the transfer of Mr. Paige to MCF-Rush City knowing that Mr. Fields and Mr. Paige were incompatible and should not have been housed together. (*Id.*) Mr. Fields also requested a transfer to another prison. (*Id.*) Thirteen days later, on October 7, 2020, Defendant Fratzke replied to the kite asking, "What is your question?" (*Id.*) [4] The kite was marked received on October 9, 2020, by someone with the initials S.H. (*Id.*) Mr. Fields's case manager's initials are S.H. (*See id.*) At the bottom of the kite however, Mr. Fields wrote "V.F I received back 10-17-2020 (SAT) in violation of policy." (*Id.*)

Mr. Fields submitted his third kite dated October 18, 2020, escalating his concerns to the Associate Warden of Operations and citing his two previous kites. (*Id.* at 14.) In it, Mr. Fields wrote that he remained in physical danger because of a plot to have him assaulted and requested that he be transferred to a prison outside of Minnesota under cover

---

is to kill Mr. Fields. Mr. Fields's 42 U.S.C. § 1983 complaint in federal court made similar allegations, but this Court narrowed Mr. Fields's allegations to a failure to protect claim related to the fight with Mr. Paige in 2019 and an excessive force claim related to the fight with Mr. Cosey in 2020. (Order at 7, Dkt. No. 117 (adopting in part a Report and Recommendation); Report and Recommendation at 30, Dkt. No. 112.) Because this first kite mentions the fight with Mr. Cosey but does not mention the fight with Mr. Paige, the Court construes this kite as related to the excessive force claim.

[4] Because this kite mentions the eye injury Mr. Fields sustained in the 2019 fight with Mr. Paige, but does not mention Mr. Cosey, Lieutenant Brewer, or mace, the Court construes this second kite as related to Mr. Fields's failure to protect claim.

of darkness. (*Id.*) He also wrote: "Your officials [and] staff[] are being directed to not give me my mail or kites as well as delay or tamper with to not send (sic) to me or [illegible] as part of this [illegible] operations to deny me access to courts–Please order them to give (sic) all my mail their [illegible] kites[.]" (*Id.*) The kite was marked received on October 21, 2020, again by a person with the initials S.H. (*Id.*) Mr. Fields commenced this litigation on the same day. (Compl. 1, Dkt. No. 1).

The Warden's office responded to the third kite with a Department of Corrections Internal Memo dated October 23, 2020, acknowledging receipt of Mr. Fields's kites and advising him to "please notify the nearest staff" if he felt he was in danger of serious injury from other offenders. (Andresen Decl., Ex. 1 at 13.) The memo continued, "[T]here is always the potential to have difficulty with other offenders. We expect offenders to respect each other's differences. As well, keep in mind that you also have to take some responsibility for your personal safety. It is up to you to navigate the prison population diplomatically and maturely while incarcerated." (*Id.*) Mr. Fields wrote on the response, "I received this 10-24-2020 (SAT) V.F . . . ." (*Id.*).

Mr. Fields proceeded to step two of the DOC grievance process and submitted a facility grievance dated October 24, 2020, citing his three previous kites. (*Id.* at 12.) In the facility grievance, Mr. Fields alleged that his life was in immediate danger and he again requested to be transferred out of Minnesota "because your officers [are] trying to be slick on ordering me to be killed." (*Id.*) He continued, "They're using offenders[,] nurses[,] [and] other staff[] to collaborate with offenders[.] Please help me!" (*Id.*) Mr. Fields also alluded to the assault on September 16, 2019. (*Id.*) On November 9, 2020, Mr. Fields received a

7

reply informing him that his grievance would not be accepted as a formal grievance because he did not file it "within 30 calendar days from the date the incident occurred." (*Id.* at 11.) The additional comments read, in part, "Your health, welfare, and safety [needs] are met while you are in the care and custody of the Department." (*Id.*) Mr. Fields wrote on the paper, "I received this on 11-14-2020 (SAT) V.F . . . ." (*Id.*) In the third and final step of DOC's grievance process, Mr. Fields submitted a Grievance Appeal on November 18, 2020. (*Id.* 9–10.) In it, he argued that he submitted his kite on October 24, 2020 because he did not know before then that he was the victim of an orchestrated attack. (*Id.* at 9.) Mr. Fields claimed that when he started the grievance process, he learned that Mr. Paige was transferred to the prison as part of a "special operation to physically assault" him, and thus his "grievance process was proper and Warden Jansen failed to process" it. (*Id.* at 9.) He pointed out that the response to his facility grievance was dated November 9, but that he did not receive it until November 14. (*Id.*) He again claimed that Mr. Cosey was planted in his cell to attack him and that the altercation between them was "all set up." (*Id.* at 10.) This appeal was returned as incomplete because his "initial grievance, filed at the facility" was not "accepted and processed as a formal grievance." (*Id.* at 8.)

In his Second Amended Complaint, filed using a section 1983 complaint form on November 30, Mr. Fields answered "yes" to the question, "Did you present the facts relating to your complaint in the prisoner grievance procedure?" (Second Amended Compl. at 3.) When asked what steps he took, Mr. Fields wrote, "I'm attempting to resolve all issues of this suit separately through [the] informal grievance process by submitting, kites (yellow) to Defendants . . . staff[] are not responding to my informal grievances per policy to

8

intentionally deny me (sic) from exhausting admin[istrative] remedies. I'm having a tough time [and] being denied to get (sic) all heard up chain of command . . . ." (*Id.*) In response to the question, "What was the result?" Mr. Fields wrote, "Pending []I can only wait on Defendants to respond–I can't go get [their] responses or force them to give me my mail or nothing . . . I'm just following policy and they're obstructing justice/the process to basically deny me adequate access to court and receive relief . . . ." (*Id.*)

## II.   STANDARD ON SUMMARY JUDGMENT

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of a factual dispute will not overcome a properly supported motion for summary judgment if there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material for the purposes of summary judgment if it will affect the outcome of the suit under the governing law. *Id.* at 248; *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Erickson*, 31 F.4th 1048 (quoting *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012)). A reviewing court considers inferences drawn from the facts in the light most favorable to the non-moving party. *United States v. Diebold Inc.*, 369 U.S. 654, 6565 (1962) (per curiam); *Walsh v. Alpha & Omega USA, Inc.*, 39 F.4th 1078, 1082 (2022).

## III. ANALYSIS

The PLRA requires prisoners to exhaust their administrative remedies before filing suit. 42 U.S.C. § 1997e (a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") Courts cannot waive the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners must exhaust the administrative process before they file in court, even if the process will not provide the kind of relief that they seek. *Booth v. Churner*, 532 U.S. 731, 741 (2001). A prisoner's failure to exhaust the administrative process is an affirmative defense and the burden is on the defendants to plead and prove a failure to exhaust. *Jones v. Bock*, 549 U.S. 199, 204, 212, 216 (2007).

Defendants moved for summary judgment based on exhaustion alone, reserving their merits arguments for another day. (Defs.' Mem. Supp. Mot. Summary Judgment 1 n.2.) The Court must decide if there is any genuine dispute of material fact as to whether Mr. Fields exhausted his administrative remedies in prison before filing this lawsuit. In this analysis, the Court must consider the whole record, and view the facts in the light most favorable to him. If there is no genuine dispute of material fact, Mr. Fields's claims are procedurally barred and Defendants are entitled to summary judgment as a matter of law.

### A. PLRA Exhaustion

The PLRA requires prisoners to exhaust all "available" administrative remedies before pursuing a section 1983 claim in federal court. 42 U.S.C. § 1997e (a). A prisoner need

not exhaust remedies that are "unavailable." *Ross v. Blake,* 578 U.S. 632, 640–42 (2016); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). Thus, when assessing exhaustion, courts must consider (i) whether administrative remedies were available and (ii) if so, whether the prisoner exhausted them. *Muhammad*, 933 F.3d at 1000.

The Supreme Court instructs that "[a]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[]," when the procedure is "so opaque" that it is useless, or when "prison administrators thwart inmates from taking advantage" of it. *Ross v. Blake*, 578 U.S. at 643–44. For example, a remedy may be unavailable where a prison official misinforms a prisoner about when he needs to make a certain filing or threatens a prisoner when he tries to make it. *See Townsend v. Murphy*, 898 F.3d 780, 783–84 (8th Cir. 2018); *East v. Minnehaha Cnty.*, 986 F.3d 816, 821 (8th Cir. 2021). Another example of unavailability is when prison officials fail to comply with grievance procedures. *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015); *Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003) (per curiam).

Here, Mr. Fields was able to submit the kites, facility grievance, and grievance appeal outlined in the grievance procedure. The central office did not accept Mr. Fields's grievance appeal because MCF-Rush City did not accept and process his facility grievance. MCF-Rush City did not accept and process Mr. Fields's facility grievance because he submitted it more than 30 days after the incident in question. Thus, when assessing whether administrative remedies were available to Mr. Fields, this Court asks whether Mr. Fields could have filed his facility grievance in a timely way. If he could have done so and did

11

not, the Court must recommend that summary judgment be granted. If he could not do so, administrative remedies were unavailable to him and the Court must recommend that the motion for summary judgment be denied.

### B. Failure to Protect Claim

Mr. Fields's failure to protect claim arose from a fight on September 16, 2019. According to the prison's grievance procedure, Mr. Fields had to submit his formal grievance within 30 days, on or before October 16, 2019. Mr. Fields did not file a formal grievance—or even a kite—about this fight until September 13 of the following year. Mr. Fields's claims that staff were not responding to his kites and were obstructing his access to the courts cannot possibly relate to his failure to protect claim, since he did not start even the informal grievance process until well past the due date for him to file his formal grievance. Thus, the Court finds that administrative remedies were available to Mr. Fields in September 2019 and that Mr. Fields did not exhaust them.

Mr. Fields argues that he initiated the grievance process when he learned that the attack was part of the alleged coordinated attack on his life. This is not an excuse; Mr. Fields knew that he got into a fight with Mr. Paige on September 16, 2019. He knew that he had fought with Mr. Paige at another prison. He knew that he was convicted of killing Mr. Paige's brother. Mr. Fields had all the information he needed to begin the informal grievance process for his failure to protect claim on the day he was injured. Nevertheless, he waited over a year to file a facility grievance about it. (Sletten Decl. at ¶¶ 9, 10.) That is not exhaustion.

Mr. Fields further argues that he filed his grievance as soon as he could and that his "severe circumstances," including his need for eye surgery, excuse his noncompliance with the procedure. (Pl.'s Mem. Opp'n Mot. Summary Judgment at 5.) This claim fails for multiple reasons. First, the Eighth Circuit has not recognized an exception to the exhaustion requirement "for delay due to medical treatment." *Hahn v. Armstrong*, 407 Fed. App'x 77, 79 (8th Cir. 2011) (unpublished); *Hill v. Malachinski*, No. 14-CV-1578 (DSD/BRT), 2015 WL 9916294, at *9 (D. Minn. Dec. 30, 2015) (citing *Hill*). Second and more importantly, Mr. Fields's claim that he was medically incapable of filing a kite appears doubtful. Mr. Fields was filing documents in another civil case, *Fields v. Henry*, by November 11, 2019, but he did not file a grievance regarding the September 2019 incident until over a year after the fight. (*See* Letter from Victor Fields, No. 17-CV-2662 (WMW/KMM), Dkt. No. 190.) Even if Mr. Fields was unable to file a grievance until November 11, 2019—when he made his other court filings—he still chose not to file the grievance when he recovered. Thus, his failure to protect claim is procedurally barred. *See Hahn*, 407 Fed. App'x at 79 (holding that even if the Eighth Circuit recognized the need for medical treatment as a valid excuse for not timely filing a grievance, such an exception would not excuse the four-year delay in filing that the court considered in that case.) [5]

---

[5] Defendants claim that Mr. Fields failed to exhaust his available remedies not only because he filed his formal grievance too late, but also because he failed to raise the failure to protect claim in the grievance he eventually filed. (Defs.' Mem. Supp. Mot. Summary Judgment 11.) Because the Court recommends finding a failure to exhaust on timeliness, it need not rule on whether the failure to protect claim was properly raised. However, Mr. Fields does mention the September 16, 2019 assault in his grievance—although he references it in the context of "ordered assaults," where he claims officials at the facility ordered other prisoners to assault him. (Andresen Decl. Ex. 1, at 12.) Further, Mr. Fields referenced the

Mr. Fields failed to exhaust the available administrative remedies on his failure to protect claim because he filed his formal grievance too late. The Court recommends granting Defendants' summary judgment motion as to Mr. Fields's failure to protect claim.

### C. Excessive Force Claim

Mr. Fields's excessive force claim arose out of a fight that Mr. Fields says occurred before September 5, 2020. Understanding that there is a dispute about the actual date, the Court assumes—only for the purpose of analyzing whether an administrative remedy was available to Mr. Fields and in order to give Mr. Fields the greatest possible latitude—that the fight occurred on September 4, 2020. In that case, Mr. Fields had to file his formal grievance on or before October 4, thirty days later. It was possible for Mr. Fields to complete the informal grievance process and proceed to filing a formal grievance within 30 days. Mr. Fields could have submitted a kite on September 5. He would need to allot one week for the first official to respond (on or before September 12). Then he could have filed his next kite on September 12 and waited another week for the next official to respond (on or before September 19). After receiving the second response, Mr. Fields would have needed to file a third kite on September 19 and wait a week for a response (on or before September 26). On September 26, seven days after filing his third kite, Mr. Fields could have filed a facility grievance. That would have been more than a week ahead of the due date. This would have been an aggressive, but achievable, schedule, and had Mr. Fields

---

September 16 assault on one of the kites attached to his grievance, saying that his case manager transferred Mr. Paige to the prison knowing that the two men were incompatible. (*Id.* at 15.)

attempted to meet this schedule, then fallen short by some small amount of time, then, depending on the reasons, the question the Court faces of whether the grievance process was available to Mr. Fields might be closer.

But that is not what happened. Mr. Fields's first kite is not dated until nine days after the fight (September 13). His case manager's response is dated two days later (September 15). Mr. Fields's second kite is dated nine days later (September 24). The second kite was received 13 days after that, when Defendant Fratzke dated her response (October 7). Mr. Fields apparently did not receive Defendant Fratzke's response until 10 days after she dated it (October 17). Mr. Fields's third and final kite was dated the day after he reports receiving the response to his second kite (October 18). Per procedure, Mr. Fields could not file a grievance sooner than seven days after filing his third kite (October 25). Mr. Fields commenced this lawsuit on October 21 and filed his facility grievance on October 24. By delaying his first kite for nine days, then delaying escalating that kite to the next person in the chain of command for another nine days, Mr. Fields placed himself in a position where it was impossible for him to complete the informal grievance process—which is a required prerequisite to filing a formal grievance under DOC's grievance procedure—in time to file a facility grievance within 30 days of the incident—as is also required by DOC's grievance procedure. Without filing a timely facility grievance, Mr. Fields cannot exhaust administrative remedies under the PLRA.

The Court is concerned that there seem to be other delays in Mr. Fields's grievance process that cannot be clearly attributed to him. It reportedly took 13 days for Mr. Fields's second kite to reach Defendant Fratzke and then another 10 days after that to be returned

15

to Mr. Fields. (*See* Andresen Decl. Ex. 1 at 15.) [6] At this stage of the proceedings—where the Court reviews the facts in the light most favorable to the non-moving party—the Court assumes Mr. Fields was not responsible for those delays. This cannot, however, erase the fact that it is Mr. Fields's delays, standing alone, that made it unavoidable that his informal grievance process would stretch on so long that it was impossible for him to file a timely facility grievance. Only by narrowing the DOC's kite response time to 48 hours was the Court able to construct a timeline under which Mr. Fields could both delay his first and second kites by nine days, and still be able to file his facility grievance thirty days after the fight, on October 4.[7]

---

[6] Constructing a timeline of when various documents were sent and received in this case presents challenges. Although Mr. Fields has dated each of his kites, that date could be the date he wrote the kite, the date he sent the kite, or neither. There is no reliable record of when a kite is sent or received. In the case of Mr. Fields's second kite, the kite is dated 9-24 by Mr. Fields, but it also bears a handwritten notation in the upper right corner that could say "kite received 10-7" or could say "kite received 10-9." (Andresen Decl. Ex. 1 at 15.) The lower half of the kite includes a more legible date of "10/7/20," which Defendant Fratzke appears to have written when she responded to the kite. (*Id.*) Finally, at the very bottom of the kite, Mr. Fields has noted that the response was received on "10-14-2020 in violation of policy." (*Id.*)

[7] Mr. Fields filed his kite to the first DOC official in the chain of command on September 13, nine days after the September 4 incident. That kite was responded to within 48 hours. Mr. Fields then allowed an additional nine days to pass before sending a kite to the second official in the hierarchy on September 24. Had DOC responded to that kite within the same time as it did the first kite, Mr. Fields would have had a response on September 26. Mr. Fields would have had to send his third kite on September 27, the day after he got his response to his third kite, but had he done so, he would have been able to file his facility grievance on the last possible day, October 4, the thirtieth day after the incident and seven days after he received a response to his third kite. Mr. Fields's ability to file a timely facility grievance, though, depends on the incident having taken place on September 4, which is an assumption the Court is making in order to give Mr. Fields the benefit of every doubt. If the incident took place even as early as September 3, not to mention the August 25 date asserted by Defendants, Mr. Fields's facility grievance would be untimely.

If delays by DOC made Mr. Fields's facility grievance untimely, then the Court would have to consider whether that made the grievance process "unavailable" to Mr. Fields, and whether Mr. Fields had exhausted his administrative remedies before filing this lawsuit would turn on resolution of that issue. But the Court does not engage in that analysis, because the DOC states that prisoners must allow seven days—not 48 hours—for each official in the chain of command to respond to a kite. Because of Mr. Fields's delays, he failed to exhaust his administrative remedies and the Court recommends granting Defendants' summary judgment motion as to his excessive force claim.

The Court also recommends dismissal of Mr. Fields's excessive force claim because he has failed to exhaust that claim in a second way. Even if Mr. Fields had filed his grievance in a timely manner, the grievance does not raise a claim of excessive force. (Andresen Decl. Ex. 1, at 12.) Nor do his kites. (*Id.* at 14–16). If Mr. Fields intended to raise this claim, he did not do it in a way that would alert prison officials that they were dealing with a claim of excessive force arising out Lieutenant Brewer's reaction to the altercation between Mr. Fields and Mr. Cosey. Defendants correctly note that Mr. Fields references Mr. Cosey in his first kite but only as a pawn in the alleged conspiracy to have other prisoners assault him. (*Id.* at 16.) Mr. Fields does not address Defendant Brewer's conduct in responding to the altercation between Mr. Fields and Mr. Cosey, which is the subject of his remaining excessive force claim. (*Id.*; *see* Report and Recommendation 30, Dkt. No. 112; Order 2, Dkt. No. 117 (adopting that portion of the Report and Recommendation).) Because "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is

17

sought," *Muhammad v. Mayfield*, 933 F.3d 993, 1003 (8th Cir. 2019) (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)), Mr. Fields had to put the DOC on notice that he was asserting an excessive force claim. He did not. Since Mr. Fields cannot exhaust a claim he has not made, his excessive force claim is, by definition, unexhausted.[8]

Mr. Fields fails to raise any genuine issues of material fact related to his failure to exhaust administrative remedies for either of his remaining claims. He failed to use the grievance procedure that was available to him, and for this reason, the undersigned recommends that summary judgment be granted as to both his failure to protect claim and his excessive force claim. *See Barbee v. Correctional Med. Servs.*, 394 Fed. Appx. 337, 338 (8th Cir. 2010) (per curiam) ("Once the court determined that the claims were unexhausted, it was required to dismiss them without prejudice."). Further, because Mr. Fields cannot exhaust his administrative remedies regarding these claims—he cannot turn back time and submit a timely grievance—the undersigned recommends that the dismissal of Mr. Fields's claims be with prejudice. *See Fisherman v. Rasmussen*, No. 12-CV-2554 (JRT/JSM), 2013 WL 3354509, at *9 (D. Minn. Jul. 3, 2013) (dismissing case with prejudice after all deadlines for filing a grievance had expired.)

IV. **RECOMMENDATION**

---

[8] Mr. Fields points to *Wright v. Dee*, 54 F.Supp.2d 199 (S.D.N.Y. 1999), and *Carter v. Kiernan*, No. 98-CV-2664 (JGK), 1999 WL 14014 (S.D.N.Y. Jan. 14, 1999), for the proposition that PLRA exhaustion requirements do not apply to his excessive force claim. (Pl.'s Mem. Opp'n Mot. Summary Judgment 2, Dkt. No. 143.) However, the Supreme Court has since clarified that the PLRA applies even to excessive force claims. *Ross v. Blake*, 578 U.S. 632, 640 (2016) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). *Wright* and *Carter* therefore cannot any longer be considered good law.

<0x0A>
<0x0A>

Having read the parties' briefs carefully and having considered the facts in the light most favorable to Mr. Fields, the Court finds that Mr. Fields failed to exhaust his remedies under the PLRA. Consequently, the Court recommends that Defendants' Motion for Summary Judgment be granted as to the remaining claims in this case.

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendants' Motion for Summary Judgment (Docket No. 136) be **GRANTED** and

2. Mr. Fields's remaining claims be **DISMISSED WITH PREJUDICE.**

Date: December 29, 2022                    *s/ John F. Docherty*
                                           JOHN F. DOCHERTY
                                           United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).